duPONT GLORE FORGAN INCORPORATED et al., Plaintiffs,

v.

AMERICAN TELEPHONE AND TELEGRAPH COMPANY et al., Defendants and Third-Party Plaintiffs,

v.

UNITED STATES of America, Third-Party Defendant.

No. 73 Civ. 2447.

United States District Court, S. D. New York.

Sept. 29, 1975.

Nickerson, Kramer, Lowenstein, Nessen, Kamin & Soll, New York City for plaintiffs; Geoffrey M. Kalmus, Robert M. Heller, Michael S. Oberman, New York City, of counsel.

Davis, Polk & Wardwell, New York City, for defendants and third-party plaintiffs; Lawrence E. Walsh, Guy Miller Struve, Hiram D. Gordon, L. Gordon Harriss, Jack P. Levin, Richard J. Cunningham, New York City, of counsel.

Paul J. Curran, U. S. Atty., for the Southern District of New York, New York City, for third-party defendant.

## OPINION

EDWARD WEINFELD, District Judge.

This action originally was instituted by six named plaintiffs,[1] who also sought class action certification on be-

---

1. duPont Glore Forgan, Inc., Swift & Company, The Home Insurance Company, Monsanto Company, Reynolds Securities, Inc. and Schenley Industries, Inc.

half of all other Centrex users similarly situated, against the American Telephone and Telegraph Company ("AT&T") and its twenty-three operating telephone company subsidiaries.[2] constituting and known as the Bell System. Centrex Service is a form of telephone service used by large business and other organizations. This type of "private communication service" was exempted from federal communication excise taxes by the Excise Tax Reduction Act of 1965, effective January 1, 1966, upon condition that a separate charge was made for such service.[3] Plaintiffs allege that because of defendants' failure to make Centrex charge separations, they were charged by and paid to various defendants excessive federal communications excise taxes which they seek to recover upon a claim of breach of fiduciary duty, and other theories. The plaintiffs also assert that defendants' continued collection of federal excise taxes on the Centrex system was the result of a combination, conspiracy or concerted action among the defendants, in violation of sections 1 and 2 of the Sherman Act.[4]

All plaintiffs were represented by the same attorneys. Upon plaintiffs' motion for class action treatment, the defendants opposed, raising among other objections that the plaintiffs' claims had been solicited by the attorneys. Since the court found that "[t]his aspect of defendants' challenge to plaintiffs as adequate representatives of the proposed class bristles with disputed fact issues as to the circumstances under which the attorneys were retained," the matter was referred to a magistrate to hear and report on the solicitation issue. During the course of the reference, three of the

named plaintiffs moved for voluntary dismissal of their claims, which motions were granted.[5] The action was continued as to three of the original plaintiffs, Monsanto Company, Reynolds Securities, Inc. and Schenley Industries, Inc.

The hearings before the magistrate extended over a considerable period with hundreds of pages of testimony recorded. Before completion of the reference, plaintiffs' attorneys, who at all times denied the charge of solicitation, moved to withdraw and for leave to plaintiffs to substitute other attorneys. They stated that the collateral inquiry on the solicitation issue had resulted in inordinate delay and were of the view that their withdrawal would permit the case to go forward for a determination upon the merits. The magistrate held that the withdrawal of the attorneys and substitution of new counsel for plaintiffs would moot the issue of solicitation and obviate the need for further hearings thereon. The defendants contended otherwise, upon the ground that the three remaining plaintiffs themselves were disqualified and sought to continue the inquiry into that subject. Upon defendants' motion to review the magistrate's determination on the solicitation issue, the court granted the motion for substitution of plaintiffs' attorneys upon a finding that new counsel were well qualified to represent the plaintiffs in this class action litigation.

We consider the plaintiffs' original motion to maintain this action as a class suit pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure which defendants continued to oppose on various grounds. Preliminarily, defendants contend that the three remaining plain-

---

2. AT&T owns from 18% to 100% of the capital stock of the defendant operating companies. Sixteen of these companies are wholly owned by AT&T. Of the remaining seven, AT&T's interest in five of the defendants is at least 85% and it owns 27% and 18% of the remaining two. In addition, AT&T has license agreements with each of

the defendant operating telephone companies.

3. 26 U.S.C. § 4252(d).

4. 15 U.S.C. §§ 1, 2.

5. duPont Glore Forgan, Inc., Swift & Company and The Home Insurance Company.

tiffs are disqualified or "tainted" because they allowed themselves to be solicited by their former attorneys for the purpose of instituting this class action litigation and in consequence they will not be able to fairly and adequately represent and protect the interests of the class. [6]

■ The charge of solicitation, as already noted, was denied by the former attorneys, but the issue was not resolved in view of their withdrawal. Assuming arguendo that plaintiffs were solicited, there has been no showing of improper conduct on their part or that they knowingly acted in concert with their former attorneys in violating the canons of ethics. The original claims of the plaintiffs continue to exist. They are not destroyed by the alleged conduct of the attorneys; nor does this circumstance by itself impair or taint plaintiffs' capacity to represent the class, if otherwise they are found to be adequate representatives of the class they seek to represent.

Upon the withdrawal of their former counsel, the three remaining plaintiffs independently engaged their present counsel to advance their claims. These plaintiffs to date have shown a resolute purpose to obtain a determination upon the merits. They have not been deterred by the extensive, if not extraordinary, pretrial discovery conducted by defendants upon the single item of solicitation, with the inevitable inconvenience and disruption of their normal business

activities and are now ready to face the prospect of renewed discovery as to other issues in the case. They have already advanced substantial sums for disbursements and are prepared to incur liability for additional disbursements to bring the case to trial.

The former attorneys have waived fees for services rendered by them to date; they are to receive no fees in this matter; they have no interest in the outcome of this case. Their withdrawal has, as the Court of Appeals observed in a somewhat related situation, "drastically" altered the nature of the case; the original issue of disqualification of attorneys, which so far has stymied trial progress is "entirely out of the case." [7] Under all the circumstances, it appears that the remaining plaintiffs are adequate representatives of the class and are not disqualified to advance their cause.

■ Before considering whether this action meets the other requirements for class action status under Rule 23, it is desirable first to pass upon the defendants' challenge to plaintiffs' standing to sue on behalf of Centrex customers who dealt with operating companies other than those which serviced plaintiffs. Plaintiffs received Centrex service from only two of the defendant operating companies. Defendants contend that plaintiffs may not represent those who obtained service from the twenty-one other operating companies who are defendants.[8] However, defendants'

---

6. Defendants rely on *Carlisle v. LTV Electrosystems, Inc.*, 54 F.R.D. 237, 240 (N.D. Tex.1972), and *Simon v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 16 Fed. Rules Serv.2d 1021, 1022 (N.D.Tex.1972), *aff'd*, 482 F.2d 880, 882–83 (5th Cir. 1972), to support their argument that such solicitation automatically compels denial of class action treatment. However, in both cases, the court's decision against class action was primarily grounded on plaintiff's clear failure to meet the express requirements of Rule 23. Also, the attorneys responsible for the solicitation misconduct had remained in the case.

7. *Korn v. Franchard Corp.*, 456 F.2d 1206, 1208 (2d Cir. 1972).

8. Defendants rely on *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 675, 38 L.Ed.2d 674, 494 (1974), in which the Supreme Court held that "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." This decision followed a long line of cases in the lower courts which had established that a "plaintiff who is unable to secure standing for himself is certainly not in

objection disregards the pleadings and the claims which plaintiffs assert.

In all, eight separate counts are alleged. The odd numbered counts, I, III and V, are based upon the same theory that the defendants' failure to separate Centrex charges constituted a breach of duty under federal statutes and principles of equity and common law and was the proximate cause of the alleged tax overpayments. The even numbered counts, II, IV and VI, are based upon the same allegations as those set forth in the odd numbered counts, with the additional claim that the charges for Centrex services were sufficiently segregated in defendants' books and records to satisfy the requirements for an exemption under the Excise Tax Reduction Act of 1965.[9] Therefore, plaintiffs contend that defendants, apart from alleged liability to the plaintiff class for damages, were under an obligation to refund this overcollection of taxes.

The eight causes of action have been grouped together as follows: Counts I and II are brought solely against AT&T on behalf of all Centrex users between January 1, 1966 and December 31, 1972; it is estimated that the class is slightly in excess of 1000 members. Counts III and IV are brought against AT&T and New York Telephone Company on behalf of all Centrex customers of New York Telephone Company between January 1, 1966 and August 1, 1972, when New York Telephone made the requisite separations. This class, already included in the nationwide class, is estimated to number 378 members. Counts V and VI are brought against AT&T and all other defendants (the twenty-three associated Bell System operating telephone companies) which are subsidiaries and licensees of AT&T, upon a claim that by failing to make the requisite separation of charges they wrongfully collected excessive excise taxes from the nationwide class described in counts I and II. Counts VII and VIII are the antitrust counts and are brought on behalf of the same nationwide class described in counts I, II, V and VI. These antitrust counts in effect encompass all other counts based upon additional allegations that the breach of statutory and common law obligations owing to plaintiffs alleged therein also constituted violation of sections 1 and 2 of the Sherman Act. In sum, under the eight counts, two classes are described, one, the nationwide Centrex customers, and two (already included in the former) the customers of New York Telephone Company. As to the latter there can be no serious dispute that plaintiffs, as customers of New York Telephone, have standing to assert the claims against it on behalf of the estimated other 378 New York Telephone customers under counts III and IV. Plaintiffs have also named AT&T as defendant under these and all other counts of the complaint.

Plaintiffs contend that AT&T, as parent company and licensor of defendant operating companies, including New York Telephone Company, directed these companies' management policies, and in particular played a significant role in their separation of charges policy. In essence, however phrased, the claim is that AT&T dominated, aided and abetted the defendant operating companies, including New York Telephone Company, in breaching their statutory and fiduciary duties allegedly owed to plaintiffs. This claim is sufficient to sustain plaintiffs' standing to represent the

---

a position to 'fairly insure the adequate representation' of those alleged to be similarly situated." *Kauffman v. The Dreyfus Fund, Inc.*, 434 F.2d 727, 734 (3d Cir. 1970), *cert. denied*, 401 U.S. 974, 91 S.Ct. 1190, 28 L. Ed.2d 323 (1971). *See also Leonard v. Merrill Lynch, Pierce, Fenner and Smith*, 64 F. R.D. 432, 434 (S.D.N.Y.1974); *Weiner v. Bank of King of Prussia*, 358 F.Supp. 684, 695 (E.D.Pa.1973).

9. 26 U.S.C. § 4252(d).

class of New York Telephone customers against AT&T under counts III and IV.[10]

The defendants press, however, that plaintiffs have no standing to sue on behalf of those Centrex customers who dealt with operating companies other than the New York Telephone Company and who are included in the nationwide class described in the other counts of the complaint. But plaintiffs in effect allege a conspiracy among AT&T and the various other defendants to deprive plaintiffs and all Centrex users, similarly situated, and no matter by which operating company they were serviced, of their right to a tax exemption by their deliberate and calculated policy not to implement separation of charges within a reasonable time after the passage of the federal Excise Tax Reduction Act.

This court is not required to and, of course, does not at this time pass upon the merits of plaintiffs' antitrust cause of action or any of their other claims,[11] all of which defendants vigorously dispute. However, based upon the pleadings as supported by evidence discovered during preliminary pretrial procedures, a finding is warranted that plaintiffs' claim of conspiracy appears to have merit and to present a genuine issue for litigation. The acts and conduct attributed to the defendants had the same impact upon all Centrex users; all allegedly were injured thereby except for differences in amounts of overpayment of taxes. In the circumstances, plaintiffs have standing to represent the class as against all the defendants.[12]

■■ Further, since the respective claims derive from the same federal tax statute which is uniformly applicable to all Centrex users and the alleged fiduciary duty also presents an issue which does not vary from one customer to another, the court finds that questions of law affecting plaintiffs, as Centrex customers, predominate over any question of law affecting an individual customer. Similarly, the same basic questions of law exist regardless of the particular defendant from whom plaintiffs seek recovery of the excise taxes. The defendants' contention that the named plaintiffs lack standing to assert state law claims on behalf of Centrex customers in any of the forty-five states in which the named plaintiffs do not have Centrex service, does not take into account the plaintiffs' allegations under their complaint, which essentially predicate all claims upon a tax exemption permitted under the federal statute. The fact that Centrex is, as defendants contend, a local telephone exchange service, subject to the jurisdiction of state and local regulatory authorities, does not diminish the right of Centrex customers to the claimed exemption and no state regulatory body may override the federal statute which permits the exemption. Further, even if plaintiffs assert alternative pendent claims under state law, this does not foreclose class action certification where other requirements of the Rule

---

10. *Cf. Jackson v. Smith*, 254 U.S. 586, 589, 41 S.Ct. 200, 65 L.Ed. 418 (1921) ; *Bankers Life & Cas. Co. v. Kirtley*, 338 F.2d 1006, 1013 (8th Cir. 1964) ; *Sexton v. Sword S. S. Line, Inc.*, 118 F.2d 708, 711 (2d Cir. 1941) ; *Irving Trust Co. v. Deutsch*, 73 F.2d 121, 125 (2d Cir. 1934), *cert. denied*, 294 U.S. 708–709, 55 S.Ct. 405, 79 L.Ed. 1243 (1935) ; *Oil & Gas Ventures-First 1958 Fund, Ltd. v. Kung*, 250 F.Supp. 744 (S.D.N.Y.1966) ; *Industrial Waxes, Inc. v. International Ry.*, 193 F.Supp. 783, 786 (S.D.N.Y.1961) ; *Austrian v. Williams*, 103 F.Supp. 64, 76

(S.D.N.Y.), *rev'd on other grounds*, 198 F.2d 697 (2d Cir.), *cert. denied*, 344 U.S. 909, 73 S.Ct. 328, 97 L.Ed. 701 (1952) ; *Broadcast Music, Inc. v. Taylor*, 10 Misc.2d 9, 55 N.Y.S.2d 94, 103 (Sup.Ct.1945) ; *Wendt v. Fischer*, 243 N.Y. 439, 154 N.E. 303 (1926).

11. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

12. *Professional Adjusting Systems of America, Inc. v. General Adjustment Bureau, Inc.*, D.C., 64 F.R.D. 35, 38–39 (1974).

are met with respect to the claims based upon federal law.[13]

■ Finally, common questions of fact predominate over individual ones, especially since plaintiffs charge concert of action among the defendants. The fact that different damages may have resulted to each member does not detract from the class action nature of this suit.[14] Thus, the requirement of Rule 23(b)(3) that the common questions of law and fact predominate over any questions affecting only individual members is satisfied.

The Rule further requires that the class action be found "superior to other available methods for the fair and efficient adjudication of the controversy." The parties in support of and in opposition to the motion for class action determination have submitted memoranda totalling more than 500 pages. Whether or not such an outpouring of legal learning was in fact necessary on a motion of this type, it does demonstrate that the parties themselves consider plaintiffs' claims to present issues that are complex and involved; also, it shows that the defendant AT&T, a corporate giant with vast resources, intends to resist the claims advanced, as indeed is not only its right but its duty to its stockholders. The experience to date with pretrial discovery on the single issue of the alleged solicitation by plaintiffs' former attorneys warrants the observation that this action, instead of following the course of normal litigation, appears to have embroiled the parties in a war of attrition.

This observation is pertinent to the response by newly retained counsel for plaintiffs to the court's inquiry why Monsanto, itself no corporate pigmy, would not, without class action determination, prosecute its claim, which amounts to $130,000. Counsel's reply was that, while Monsanto was willing to continue to pay disbursements which, to date, have been substantial, the time-cost factor of legal fees in view of the vigor of defendants' opposition, made it uneconomical to proceed with the suit on an individual basis even assuming an ultimate recovery—in fact, Monsanto would, if required to proceed on an individual basis, forego its claim. Recent experience with legal charges and their computation suggests that counsel's statement was not exaggerated.[15] Thus, the assertion that this action will not go forward at all if class action status is denied is plausible. The hard fact is that economic reality indicates the likelihood that unless this action is permitted to proceed as a class suit, it is the end of this litigation.

■■ Such a prospect requires consideration of the claims of others in the class. It is estimated, as previously noted, that there are approximately 1000 nationwide Centrex users in plaintiffs' class. Many of these claims are for substantially lesser amounts than those asserted by the three named plaintiffs. It has been stated that a significant number are considerably below $10,000 each. For those potential plaintiffs, denial of class action would be tantamount to a denial of their day in court, since any attempt to litigate their individual claims would mean taking on a powerful opponent ready to bring into play its full strength and unlimited resources to resist the suits. The sheer disparity of economic forces suggests the death knell of those claims if individual actions are required. Thus, even if the named plaintiffs were to accept the risks and burdens of this action as individuals, the denial of class action would as a realistic

13. *Cf. Haas v. Pittsburgh Nat'l Bank*, 60 F. R.D. 604, 606–07 (W.D.Pa.1973).

14. *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 566 (2d Cir. 1969); *Kronenberg v. Hotel Governor Clinton, Inc.*, 41 F.R.D. 42, 45 (S.D.N.Y.1966).

15. *Blank v. Talley Industries, Inc.*, 390 F. Supp. 1, 4 (S.D.N.Y.1975).

matter put at rest the much smaller claims of other similarly situated Centrex users.[16] As this court indicated in *Free World Foreign Cars, Inc. v. Alfa Romeo*,[17] the essential purpose of Rule 23 is "to encourage suits to redress rights where claims would otherwise be too small to warrant individual litigation." It is recognized that the smaller individual claims, those under $10,000, are much larger than the claims which generally have been the subject of the "death knell" theory. But general terms are relative; they are not absolutes. The death knell may also sound upon a claim, which upon the surface in dollar amount is substantial, when the heavy costs of litigation dictate its abandonment as a matter of economic reality, even though it may have merit.

Thus, in *State of Minnesota v. United States Steel Corporation*, the court realized "[w]hile claims held by steel purchasers would undoubtedly normally be larger than those brought in the *Eisen* case, nevertheless, it is extremely difficult to bring an antitrust action against six major steel fabricators without the financial aid made possible by the class action device."[18] The court there further observed that "[f]ew are the individual claimants with a sufficient interest at stake or resources to bring a suit requiring proof of a conspiracy among business corporations."[19] One of the factors which the court particularly emphasized was that "[d]iscovery expense alone normally would be prohibitive"[20] in such a suit. Certainly this has been amply demonstrated in the instant action, where with the case hardly off the ground discovery to date has produced over 9000 pages of documents. If this is a forecast of events to come, it borders on the absurd to expect that the smaller claimants would commence individual suits.

But of greater significance than the numerosity of claims, the smallness of many of them and the disparity in economic forces, is that the case, whether maintained individually or as a class action, is fraught with difficult questions of law and fact, which makes the class action a superior method of resolving the issues. The mere statement of plaintiffs' claims, the concepts relied upon to support them, and the nature of the various defenses leaves no doubt that the case presents novel issues which are, in defendants' own words, both

16. In addition to the instant action, four other individual suits have been brought on similar grounds against the Bell System. In this district, Exxon Corporation filed an action against AT&T and three operating companies, New York Telephone Company, Southwestern Bell and South Central Bell Telephone Company. *Exxon Corp. v. AT&T, et al.*, S.D.N.Y., 74 Civ. 1488 (April 1, 1974). In the District of Connecticut two actions were commenced, one by United Aircraft Corporation against AT&T and Southern New England Telephone Company, *United Aircraft Corp. v. AT&T, et al.*, D.Conn., Civil Action No. H–296 (1973), and one by Hartford National Bank against AT&T and Southern New England Telephone Company, *Hartford National Bank v. AT&T, et al.*, D. Conn., Civil Action No. H–270 (1973). The fourth action was instituted in the Connecticut Superior Court by Travelers Insurance Co. against Southern New England Telephone Company, *The Travelers Ins. Co. v. The Southern New England Telephone Co.*, Conn.Super.Ct., Hartford County, No. 18229 (May 18, 1973). The damages alleged in *Exxon* are approximately $500,000. The amounts involved in the *Hartford National Bank*, *Travelers* and *United Aircraft* cases are approximately $49,000, $162,000 and $232,000, respectively. Thus, the fact that these claims are pending does not resolve the problem of the smaller claims.

17. 55 F.R.D. 26, 30 (S.D.N.Y.1972).

18. 44 F.R.D. 559, 572 (D.Minn.1968).

19. *Id.*

20. *Id.*

"variegated and complex."[21] Superiority under Rule 23(b)(3), while primarily concerned with the economic feasibility of individual actions by small claimants,[22] is not limited to this consideration. Rather, as the Advisory Committee on Civil Rules indicated at the time of revision of Rule 23:[23]

> "Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."

The factors of judicial efficiency, economy and uniformity are prevalent in the instant case, which involved over 1000 potential individual claims, and questions of the interpretation to be given a federal tax statute.

Finally, this court finds the class action to be "manageable" under section (b)(3) of Rule 23. Certainly any difficulties in handling this suit as a class action are far surpassed by the difficulties, in terms of judicial economy of administration, which would be involved in litigating these claims as individual actions.

For all of the above reasons, the court is satisfied that a class action is "superior" under the Rule, and further that all of the other prerequisites to class action treatment have been met.[24] Accordingly, the motion for class action determination is granted.

---

21. Memorandum of Law in Opposition to Plaintiffs' Motion for Class Action Treatment, p. 18 n.*.

22. *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 560 (2d Cir. 1968).

23. Advisory Committee Report, Proposed Rules of Civil Procedure, 39 F.R.D. 69, 102–03 (1966).

24. The court rejects defendants' contention that the claim for overcollection of federal excise taxes stated in counts II, IV and VI of the complaint is not amenable to class action certification. In this instance, once again, the pleadings control. The suit here is not against the government; it is against private corporations which allegedly violated the rights of the plaintiff by making an overcollection of their federal communication excise taxes. Whether a cause of action for such overcollection may be brought against a private party is, of course, not an issue presently before the court.