**Fernande O. STEINMETZ and Ruby Stone Friedman, Plaintiffs,**

v.

**BACHE & CO. INC., Defendant.**

**No. 75 Civ. 5341.**

United States District Court,
S. D. New York.

April 27, 1976.

Pomerantz, Levy, Haudek & Block, New York City, for plaintiffs; Robert B. Block, New York City, of counsel.

Sullivan & Cromwell, New York City, for defendant; Richard J. Urowsky, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

This is the latest of a series of lawsuits instituted in federal and state courts against Bache & Co. Inc., the underwriter of $4.8 million first mortgage industrial revenue bonds issued by the Montgomery County Industrial Development Agency ("Agency") in March 1972. The proceeds of the bonds were to be used for the acquisition of real property and the construction of an industrial facility to be leased by the Agency to the Palatine Dyeing Company, Inc., a textile dyeing and finishing company. The debt service on the bonds was to be met by rental payments from Palatine. Since the Agency was a public instrumentality of the state, the bonds were exempt from registration with the Securities and Exchange Commission. However, an "Official Statement" was prepared in connection with the issue which generally followed the form and contained the information required in a prospectus.

The issue was completely sold on the day of the underwriting. Thereafter the bonds were not generally traded by bond dealers. The after market trading consisted of repurchases by Bache & Co. from its customers and later resale to other customers. The two plaintiffs here purchased their bonds in the after market. On January 31, 1973 each purchased from Bache & Co. $15,000 face amount of bonds for $15,937.50.

In October 1973 Palatine filed a petition under Chapter 11 of the Bankruptcy Act and the bonds have been in default since. The Trustee in Bankruptcy sold the industrial facility which secured the bonds, and although no final report has been filed, it is alleged that the bondholders will lose some 70% of their principal investment, plus interest.

Almost three years after their purchase of the bonds plaintiffs commenced this action on October 27, 1975 on their own behalf and that of all purchasers of bonds. The

complaint alleges that Bache violated section 10(b) of the Securities Exchange Act of 1934 [1] and Rule 10b–5 promulgated thereunder by preparing or collaborating in the preparation of the "Official Statement," which misrepresented or omitted material matters in that it contained forecasts of Palatine's net sales and operating earnings which "had no reasonable basis"; that the Statement "should have disclosed the uncertain demand for Palatine's product and the marginal nature of its business"; that the Statement, which noted that the bonds were "legal investments" for municipalities and certain types of institutions, should have categorized the bonds as "speculative securities"; and in that the Statement should have disclosed that the appraised value of the facilities would not be realized in the event of a forced sale.

Plaintiffs do not allege that they relied upon any of the alleged misrepresentations or omissions or that they saw or knew of the Official Statement at the time of their purchase in January 1973. The theory of their complaint is that the alleged misrepresentations caused an inflation in the price of the bonds both at the time of the original underwriting in March 1972 and also thereafter when the bonds were traded by Bache and when plaintiffs made their purchases.

Plaintiffs now move under Rule 23 of the Federal Rules of Civil Procedure for an order that this action be maintained as a class action on behalf of all purchasers of the bonds, both upon initial distribution and in the after market up to October 9, 1973. Understandingly, defendants, in resisting plaintiffs' motion, among other matters, challenge the merits of their claim and contend that they cannot establish a "market fraud." However, on this motion for class action determination, inquiry into the merits of plaintiffs' claim is foreclosed; the sole issue is whether the requirements of Rule 23 are met.[2]

Rule 23(b) provides:

"*Class Actions Maintainable.* An action may be maintained as a class action *if* the prerequisites of subdivision (a) are satisfied, *and* in addition:

.   .   .   .   .

(3) the court finds . . . that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." (emphasis added)

Assuming arguendo that the four criteria enumerated in paragraph (a) of the Rule are met,[3] this court finds that class action status would not be "superior" to other available methods for adjudicating controversies between Bache & Co. and those who purchased bonds from it.[4]

Rule 23(b) specifies several elements which the courts are to consider in determining the question of superiority:

"(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the

---

1. 15 U.S.C. § 78j(b).

2. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732, 748–49 (1974).

3. Plaintiffs' original belief that the "class includes hundreds, if not thousands, of persons" has given way to a subsequent allegation that in all there were 185 purchasers of bonds. This, however, does not indicate how many were original purchasers and how many were after market purchasers; neither is there any indication of the number of institutional purchasers as against individual purchasers.

4. Having determined that the superiority requirement, which is, according to our Court of Appeals, "in many ways, the most important requirement," *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968), is not satisfied here, this court need not consider whether the other prerequisites for class action certification are met. *Wilcox v. Commerce Bank of Kansas City*, 474 F.2d 336, 345 (10th Cir. 1973); *Boring v. Medusa Portland Cement Co.*, 63 F.R.D. 78, 83 (M.D.Pa.1974).

difficulties likely to be encountered in the management of a class action."

The major factors, for a determination of the instant action, are (A) and (B). This is the twentieth action instituted since the failure of the bond issue in late 1973. The nineteen other lawsuits were commenced against Bache by bondholders in various state and federal courts; three are presently pending in the Southern District of New York, one of which has been assigned to this court.[5]

Three of the suits were brought to recover $5,000 each, the smallest unit in which the bonds could be purchased, and, in five of the suits, damages of $10,000 each were involved. Thus, plaintiffs' attorney's statement that if plaintiffs' class action motion is denied, it will sound the "death knell" of plaintiffs' claims which amount to $30,000, is repelled by the pending lawsuits for lesser amounts. The existence of at least eight suits seeking damages of $10,000 or less indicates that a class action in the instant case is not mandated to fulfill the purpose of Rule 23 to encourage suits to redress rights when the claims "would otherwise be too small to warrant individual litigation."[6]

Moreover, the fact that nineteen lawsuits all based on the failure of the bond issue have been brought, on an individual basis, suggests that each bondholder may have a strong interest in "individually controlling the prosecution . . . of separate actions,"[7] especially since these actions, except for one, are not grounded upon plaintiffs' theory that misrepresentations in the Official Statement inflated the price they paid for their bonds. Rather, it appears that those bondholders allege causes of action based upon oral representations made directly to them, as individuals, by Bache which induced them to purchase the bonds. In each case the alleged representations may be different with the proof varying from case to case. A number of these cases have been disposed of; verdicts were rendered in four actions, three of which were favorable to Bache; one plaintiff voluntarily dismissed his action; and in two cases settlements were reached. Moreover, defendant states it has offered rescission to fifteen other purchasers of bonds with total holdings of $250,000. All of the foregoing suggests that the purchasers of the bonds prefer to go their individual ways and are capable of fending for themselves. Thus, the court is not convinced that a class action is required or will best serve the interests of the outstanding 185 bondholders or that it will promote judicial economy of administration.[8]

---

5.  *Scarfarotti v. Bache & Co. Inc.*, 75 Civ. 1930 (EW); *Hubert v. Bache & Co. Inc.*, 75 Civ. 3521 (MEF); and *Zatko* and *Samuel v. Bache & Co. Inc.*, 75 Civ. 5833 (CLB). Significantly, the latter two cases have not been deemed related cases, which would have required their transfer to a single judge. *See* Local Calendar Rule 13.

6.  *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 560, 563 (2d Cir. 1968); *Kesler v. Hynes & Howes Real Estate Inc.*, 66 F.R.D. 43, 41 (S.D. Iowa 1975).

7.  Fed.R.Civ.P. 23(b)(3)(A).

8.  Plaintiffs' reliance on this court's decision in *duPont Glore Forgan Incorporated v. American Telephone and Telegraph Company*, 69 F.R.D. 481 (S.D.N.Y.1975) is misplaced. In *duPont*, this court held that denial of class action status would, as a realistic matter, put to rest both the individual plaintiffs' claims and those of many of the class members. Thus, the court found that regardless of the size of the individual claims involved, plaintiffs' contention that "the

time cost factor of legal fees in view of the vigor of defendants' opposition, made it uneconomical to proceed with the suit on an individual basis" was well-founded since this action "instead of following the course of normal litigation, appears to have embroiled the parties in a war of attrition." *Id.* at 487. Additionally, many of the claims of the approximately 1000 class members were for "substantially lesser amounts" than those of the named plaintiffs, so that

"denial of class action status would be tantamount to a denial of their day in court, since any attempt to litigate their individual claims would mean taking on a powerful opponent ready to bring into play its full strength and unlimited resources to resist the suits." *Id.*

Accordingly, the court held that "the sheer disparity of economic forces suggests the death knell of these claims if individual actions are required." *Id.* Furthermore, the court found that "factors of judicial efficiency, economy and uniformity are prevalent in the instant case, which involved over 1000 potential

Plaintiffs argue that the fact that only one of the nineteen suits instituted has asserted a claim based on the Official Statement shows that there is no conflict in maintaining this action as a class action despite the number of individual suits now in progress. However, the failure of plaintiffs in the other eighteen suits to attack the Official Statement may well indicate a lack of faith or interest among the bondholders in plaintiffs' legal theory. As the court held in *Berley v. Dreyfus & Co.*,[9] "[i]f a class of interested litigants is not already in existence the court should not go out of its way to create one without good reason."

■ Not every securities fraud claim requires class action certification. Certainly, as this court has observed, Rule 23 is "not intended to permit a private litigant to enhance his own bargaining power by a claim that he is acting for a class of litigants," nor is the purpose of the Rule to reap "a golden harvest of fees" for lawyers who bring class actions.[10] Plaintiffs here sue for a sum twice that of many other litigants who have been able to maintain their suits without class action certification.

Under the circumstances, this court is satisfied both that this suit can proceed if class action treatment is denied and that such treatment is not "superior" under the Rule to alternative methods of adjudication, including the individual bondholder suits already extant, the possible consolidation of the instant action with one or more of those suits presently before this court, the commencement of further individual suits, and any settlement negotiations which may continue between Bache and the purchasers of the bonds.

Accordingly, plaintiffs' motion to maintain this suit as a class action is denied.

claims, and questions of the interpretation to be given a federal tax statute," thus making the class action superior to other alternatives. *Id.* at 489. None of these elements of "numerosity of claims," "disparity in economic forces" or "judicial economy of administration" is present in the instant action.

**9.** 43 F.R.D. 397, 398–99 (S.D.N.Y.1967).

**10.** *Free World Foreign Cars, Inc. v. Alfa Romeo*, 55 F.R.D. 26, 30 (S.D.N.Y.1972).