**BRAGER & COMPANY, INC., Plaintiff,**

v.

**LEUMI SECURITIES CORPORATION, Bank Leumi le-Israel B. M. and Bank Leumi Trust Company of New York, Defendants.**

No. 76 Civ. 4110.

United States District Court,
S. D. New York.

Feb. 3, 1982.

---

**32.** *See supra* at n.11.

**33.** *See supra* at n.28 and accompanying text.

Solin & Breindel, New York City, for plaintiff.

Parker, Chapin, Flattau & Klimpl, New York City, for defendant Bank Leumi Trust Co. of New York; Stephen F. Harmon, Patricia L. Truscelli, New York City, of counsel.

Reavis & McGrath, New York City, for defendants Leumi Securities Corp. and Bank Leumi le-Israel B. M.; Stephen R. Steinberg, David C. Birdoff, N. Lewis Gerber, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

In this private antitrust suit involving State of Israel bonds traded in the secondary market in the United States, the jury returned a verdict in favor of the defendants and the judgment entered thereon was affirmed upon appeal without opinion.[1] The litigation extended over a substantial period beginning with pretrial discovery, during which scores of witnesses in this district, California and Israel were deposed to the verdict at the end of a five-week trial. The stenographic record of depositions totalled thousands upon thousands of pages and the documents and answers to interrogatories also ran to thousands of pages. Costs have been taxed in the total sum of $258,076.75 in favor of three defendants, Leumi Securities Corporation, Bank Leumi le-Israel B. M. (represented by one firm of attorneys) and Bank Leumi Trust Company of New York (represented by another firm of attorneys) (hereinafter "defendants"). The matter is now before the Court on plaintiff's exceptions to items that were allowed by the Clerk of the Court and on the defendants' exceptions to the disallowance of items in their proposed bill of costs. Rule 54(d) of the Federal Rules of Civil Procedure which provides "costs shall be allowed as of course to the prevailing party unless the court otherwise directs," vests the Court with discretion to allow or disallow costs[2] a discretion that invokes a judgment as to the necessity and reasonableness of the costs.

Under American jurisprudence, unlike that of English and other jurisdictions, as a general rule the prevailing litigant ordinarily is not entitled to collect reasonable attorneys' fees from the losing party.[3] While the issue here centers about taxable costs, authorized by statute, the Supreme Court has cautioned district judges to carefully scrutinize items proposed by winning parties, lest

> [a]ny other practice would be too great a movement in the direction of some systems of jurisprudence that are willing, if not indeed anxious, to allow litigation costs so high as to discourage litigants from bringing lawsuits, no matter how meritorious they might in good faith believe their claims to be. Therefore, the discretion given district judges to tax costs should be sparingly exercised with reference to expenses not specifically allowed by statute.[4]

Viewed in gross, the sum of $258,076.75 taxed by the Clerk of the Court in favor of the prevailing defendants appears to be a step in that direction. The fact that the parties engaged in a "bitter litigation" which objectively can be described as a war

1. 646 F.2d 559 (2d Cir. 1980), cert. denied, 451 U.S. 987, 101 S.Ct. 2322, 68 L.Ed.2d 845.

2. Farmer v. Arabian American Oil Co., 379 U.S. 227, 235, 85 S.Ct. 411, 416, 13 L.Ed.2d 248 (1964).

3. Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975).

4. Farmer v. Arabian American Oil Co., 379 U.S. 227, 235, 85 S.Ct. 411, 416, 13 L.Ed.2d 248 (1964).

of attrition[5] with plaintiff itself bearing at least equal responsibility for the inordinate expenses incurred, does not require the Court to acquiesce in their extravagant indulgences. Based upon familiarity with the issues in the case and the activities of the lawyers throughout the litigation, the Court is of the view that the costs as taxed are egregiously excessive and far beyond reasonable[6] and justifies this Court's observation that

[u]ndoubtedly, parties to a litigation may fashion it according to their purse and indulge themselves and their attorneys, but they may not foist their extravagances upon their unsuccessful adversaries. To sanction this policy may result not only in harassing a litigant, but may even deprive him of his day in court, particularly where, as in the instant case, there is great disparity in the financial resources of the parties. Fear of imposition of astronomical costs should not be a deterrent against the assertion of legitimate disputes; nor should one who in good faith brings an action be penalized because he has failed to carry his burden of persuasion.[7]

■ While this Court, on the defendants' motion for summary judgment, expressed the view "that the factual underpinnings for plaintiff's Sherman and Clayton Act claims are somewhat shallow"[8] and the jury found in favor of the defendants, it does not follow that plaintiff should be penalized by staggering costs because it has failed to carry its burden of persuasion. This is so particularly in private antitrust suits. Such actions with their treble damage recovery, where plaintiff succeeds, not only serve to redress the private wrongs but constitute an auxiliary force in the protection of the public interest against those engaged in Sherman and Clayton Act violations.[9] That force should not be discouraged by the prospect of crushing costs in instances where plaintiffs do not prevail. Finally,

[t]he policy of the Federal Courts has been to keep litigation costs down—as particularly enunciated in Rule 1 of the Federal Rules of Civil Procedure, ". . . to secure the just, speedy, and inexpensive determination of every action." The court's discretion should be exercised in conformity with that policy to avoid ". . . making the federal court a court only for rich litigants."[10]

Against the background of those concepts, we consider the various items at issue.

## I.

### Plaintiff's (losing party's) Objections to Allowances

The largest item in controversy is $187,588 (reduced by consent of the parties to $177,888). This was a charge for the services of a certified public accounting firm in collating and making an analysis of brokerage transactions in Israeli investment and tourist bonds from which a data base and computer runs were prepared so that market shares could be determined and price comparisons made. The accountants who had been engaged by the defendants had

---

5. *Cf. duPont Glore Forgan, Inc. v. American Tel. & Tel. Co.,* 69 F.R.D. 481, 487 (S.D.N.Y. 1975).

6. It is not without interest to note that in a case referred to by the Court of Appeals as "one of the largest and most significant antitrust suits in history" where the trial period was seven months, the total costs were $343,794.73 and that amount was subject to reduction upon remand because it included expert witnesses' fees and expenses for use of a computer retrieval service. *Berkey Photo Inc. v. Eastman Kodak Co.,* 603 F.2d 263, 268, 309, n.75 (2d Cir. 1979), *cert. denied,* 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980).

7. *Farmer v. Arabian American Oil Co.,* 31 F.R.D. 191, 193 (1962), *aff'd in part and rev'd in part,* 324 F.2d 359 (1963), *rev'd,* 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964).

8. *Brager & Co. v. Leumi Securities Corp.,* 84 F.R.D. 220, 220–21 (S.D.N.Y.1979).

9. *See United States v. Standard Ultramarine & Color Co.,* 137 F.Supp. 167, 171 (S.D.N.Y.1955).

10. *Farmer v. Arabian American Oil Co.,* 31 F.R.D. 191, 194 (S.D.N.Y.1962), *aff'd in part and rev'd in part,* 324 F.2d 359 (2d Cir. 1963), *rev'd,* 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964).

been advised that plaintiff was claiming that Leumi Securities had a monopolistic market share and that it was paying anticompetitive prices. The accounting firm, based upon information derived from records obtained from broker-dealers prepared data file charts and computer runs which purported to reflect, among other matters, market shares and price comparisons.

The parties dispute whether the computer runs were prepared for expert testimony upon the trial. This is significant since an expert's fee is not a taxable cost.[11] Although the accounting firm had been retained by the defendants, plaintiff called the partner under whose direction the computer program had been prepared and through his testimony introduced in its case one of the computer runs. The defendants rely upon this circumstance and also upon the nature of the material prepared, contending that the charts and computer runs were not for expert use but compiled for preparation of factual data for use in the case. This draws too fine a line. The totality of the evidence, including affidavits by defendants' counsel, as well as other documents, make it clear that the essential purpose of this study was for use by their expert. The computer cards were used by the defendants' economic expert in expressing his opinion.[12] The subject of his opinion was trade volume, price behavior and market share. Significantly, the bill of costs submitted by the defendants to the Clerk of the Court stated:

> [T]he computer keypunch cards which contain the factual information that comprised the data base were utilized by Professor Almarin Phillips in formulating his opinions as an expert witness on behalf of

the defendants Leumi Securities Corporation and Bank Leumi le-Israel B. M. The Court finds that the bulk of the accounting firms' services were for use by the defendants' expert. However, one item of the accounting firm's charges which amounts to $19,038 was for preparing items that *plaintiff* offered in evidence and that could not have been prepared without the compilation of the data file. Since plaintiff availed itself of this material, the costs thereof, $19,038, are allowed; the remainder of the accounting firm's charge is disallowed.

The next item at issue is $1,630, the travel expenses of a witness who came from Israel to testify at the trial. He had been deposed previously in Israel as a director of one defendant and officer of another. While no doubt the defendants desired the "live" testimony of the witness before the jury to deny the plaintiff's charge that a "threat" to drive the plaintiff out of the Israeli bond market had been made, the element of expense cannot be ignored.[13] The witness' deposition was available for use upon the trial. If the defendants preferred the benefit of his demeanor before the jury, they should bear the expense thereof. In the exercise of discretion, this item is disallowed except for the travel expense of 100 miles to and from the courthouse.[14]

The next challenged item is the rate at which the depositions of four witnesses are to be taxed. The Clerk of the Court allowed these at a daily rate, which totals $41,792.88. There was no emergency situation requiring that depositions be transcribed overnight. The fact is that the

---

**11.** *Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263, 309 n.75 (2d Cir. 1979), *cert. denied,* 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980); *Trans World Air Lines, Inc. v. Hughes,* 449 F.2d 51, 81 (2d Cir. 1971), *rev'd on other grounds,* 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973); *see also Henkel v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co.,* 284 U.S. 444, 446, 52 S.Ct. 223, 224, 76 L.Ed. 386 (1932).

**12.** Trial Record at 3698, 3709, 3737.

**13.** *Farmer v. Arabian American Oil Co.,* 31 F.R.D. 191, 195 (S.D.N.Y.1962), *aff'd in part and rev'd in part,* 324 F.2d 359 (1963), *rev'd,* 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964).

**14.** *See Airco v. Cie. de Navegacion Transoceanique,* 409 F.2d 1002, 1004 (2d Cir. 1969); *Farmer v. Arabian American Oil Co.,* 31 F.R.D. 191, 195 (S.D.N.Y.1962), *aff'd in part,* 324 F.2d 359 (2d Cir. 1963), *rev'd,* 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964).

taking of depositions was delayed by the parties until the Court fixed a cut-off date. The objection is sustained and the costs of the four depositions shall be taxed at the regular rate.

The Clerk allowed the sum of $3,663, the cost of reproducing trial exhibits. Once introduced into evidence, the exhibits were in the custody of the Clerk of the Court and were available to all parties. Reproduction of the exhibits clearly was not necessary; it was for the convenience of counsel. This item is disallowed; however, an item in the sum of $500 for reproduction of exhibits attached to depositions taken by Leumi Securities and Leumi (Israel) is allowed. These were not available for presentation upon the trial except by way of attachment to the deposition.

The plaintiff challenges the allowance of the $1,984.99 cost of obtaining certified copies of SEC documents which were admitted into evidence.[15] These were required by the defendants in support of their defense. Plaintiff, however, urges "it would have stipulated," had it been asked, to the authenticity of the documents. But the need for the certified copies could have been obviated by a stipulation in the pretrial order—one of the very purposes of such an order under Rule 16(3) of the Federal Rules of Civil Procedure. In the absence of such a stipulation, the expense of the exhibits is allowed. Plaintiff's counsel's post-trial statement that they "would have stipulated" to various documents' authenticity is at odds with their position prior to the trial when they unsuccessfully urged this Court to reject portions of the Magistrate's report which contained recommendations of undisputed facts.[16] There were a number of other instances when plaintiff's counsel adopted an intransigent attitude with respect to matters that were not in dispute. Plaintiff's objection to the allowance of $86, the cost of obtaining certified copies of

"yellow sheets" from the National Quotation Bureau is overruled for substantially the same reasons.

Plaintiff challenges an allowance of $4,879.50, the cost of purchasing depositions of twelve persons deposed by plaintiff. It contends that the defendants should have made photocopies of the respective depositions when they were forwarded to the defendants' attorneys for execution by the witnesses. This expense could have been eliminated by plaintiff, who deposed the witnesses, filing the depositions upon their execution with the Clerk of the Court, thereby making them available to defendants. Plaintiff, however, following a current practice, did not do so. If parties desire to avoid the situation here presented, they can readily do so by causing the depositions to be filed pursuant to Rule 30(f) of the Federal Rules of Civil Procedure. Plaintiff's exception is overruled.

The final item to which plaintiff objects is $1,999 with respect to the deposition of plaintiff's experts which were taken by defendants under a Court order that directed the appearance of the experts. The order, however, provided that the defendants pay the fees and expenses of the experts in attending the depositions. The order was entered pursuant to Rule 26(b)(4)(C) of the Federal Rules of Civil Procedure, which provides:

> Unless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery. . . .

In its brief submitted to the Magistrate on issues that had developed with respect to deposing one of plaintiff's experts, the defendants stated, "[w]e do not object to paying the witness a reasonable fee for the time spent in taking his deposition."[17] The order that was entered did not provide that

**15.** 28 U.S.C. § 1920 provides that "[f]ees for exemplification of copies of papers necessarily obtained for use in the case" may be taxed.

**16.** *Brager & Co. v. Leumi Securities Corp.*, 84 F.R.D. 220, 222 (S.D.N.Y.1979).

**17.** Reply Memorandum in Support of Defendants' Motion to Take Oral Depositions of Plaintiff's Expert Witness, at 11.

the payment was subject to taxation in the event the defendants prevailed upon the trial. Under all the circumstances, there is no basis for a change in the original order. The item at issue is disallowed.

## II.

#### Defendants' (Prevailing Parties') Motion to Review Costs Disallowed by the Clerk

28 U.S.C., section 1920(2) authorizes the taxation of "fees of the court reporter for all or any part of the stenographic transcript *necessarily* obtained for use in the case" (emphasis supplied). Each of the three defendants sought costs for a separate copy of the trial transcript at the daily rate. The Clerk allowed the cost of only one copy at a regular non-daily rate for all three defendants and apportioned two-thirds to the two defendants represented by one firm of attorneys and the other third to the remaining defendant represented by a different firm of attorneys. The plaintiff contends the Clerk was correct in allowing the cost of one copy at the regular non-daily rate and apportioning that cost among all three defendants.

 The defendants are related companies—indeed, one of the charges was deep-pocket abuses in furtherance of alleged anticompetitive conduct. Leumi Securities and Bank Leumi Trust Company of New York are subsidiaries of Bank Leumi le-Israel B. M. and wholly controlled by the parent. While legally each defendant is a separate entity, realistically, all defendants were as one in the resistance of plaintiff's monopoly charges and they presented a common defense. It is difficult to justify a separate allowance to each defendant for a trial transcript in view of the identity of interest. This is not a case where the interests of the defendants were separate, diverse or were in conflict. There is no adequate explanation why separate copies of the transcript were required by the separate attorneys representing the closely affiliated defendants other than it served

their convenience. In this circumstance, allowance will be made for one copy. The next issue then is at what rate—daily or regular.

Plaintiff now claims that the issues were comparatively simple; that in advance of trial they had been fully explored in the deposition-discovery process and on the defendants' motion for summary judgment which obviated the need for daily transcripts. The plaintiff's claim that the issues were simple is belied by the massive record compiled by the parties in advance of trial. It is in sharp contrast to its contentions repeatedly made during the pretrial discovery period in justifying extensive discovery, both testimonial and documentary.

This Court is of the view that, as a general rule, counsel, as well as the Court, should make their own notes and abstracts of trial testimony, and does not allow for daily transcripts in an uncomplicated and simple case. However, this was no simple case. The trial lasted five weeks and was, as noted in the Court's charge to the jury, "somewhat protracted" with substantial testimony as to statistical data, complicated analyses, and interpretation of charts, already referred to. The daily minutes were essential in expediting the progress of the case; they were not only helpful to the lawyers in the direct and cross-examination of witnesses, thereby moving the case forward, but also enabled the Court to review each preceding day's transcript before the start of the next session. They were also of aid to the Court in the preparation of the charge in relating the factual aspects of the case to the essential elements of plaintiff's claims and in assuring accuracy in references to the testimony of witnesses. Considering the nature of the case, the complexity of the issues and the number of witnesses who testified, the Court is of the view that the instant case presents an exception to its usual rule and that the daily transcript was a matter of substantial necessity and not mere convenience.[18] The

---

18. *See Electronic Specialty Co. v. International Controls Corp.*, 47 F.R.D. 158, 159, 162 (S.D.N.Y.1969); *Bank of America v. Loew's International Corp.*, 163 F.Supp. 924, 927 (S.D.N.Y. 1958).

allowance shall be at the daily overnight rate.

 The Clerk disallowed the cost of the transcript of depositions of certain witnesses which were not used upon the trial.[19] Plaintiff asserts that as to some of these witnesses, it concluded that the evidence was insufficient to name them as defendants; and that as to the others, it did not avail itself of their depositions at the trial. Thus, plaintiff contends that since a number of these depositions were "investigatory" and the remainder were not used upon the trial, they were not "necessary" and, accordingly, it should not be taxed with the cost of these depositions. Plaintiff's claim, on its face, is specious. The service by plaintiff of the notice to take depositions of witnesses required defense counsel to attend to protect the interests of the defendants. Plaintiff engaged in a free-wheeling activity of the type which has caused concern by both Bench and Bar with the abuse of the discovery process.[20] It examined scores of witnesses and put the defendants to substantial expense for legal and travel costs for attendance at such depositions both here and abroad for which they will not be reimbursed. It comes with ill grace for plaintiff to be asked to be relieved of the cost of transcripts incurred as a result of what appears to have been an unrewarding "fishing expedition." It would be a different matter if the defendants had engaged in such activities and were seeking to tax the costs of such depositions. But here it was the plaintiff who forced the expenses on to the defendants.[21] Plaintiff has advanced no logical reason why defendants should not be reimbursed. With respect to the depositions noticed by the defendants that were not introduced during the trial, they were necessary in view of the free-wheeling discovery by plaintiff in order to safeguard the defendants' interests. Accordingly, all the foregoing may be taxed by defendants at the regular rate.

The next item disallowed by the Clerk is the $3,451 travel expense incurred by Leumi for attendance in Israel by the notice of plaintiff of a deposition of a witness, by plaintiff's New York counsel. If plaintiff's attorney deemed it important to travel to Israel there to conduct the examination of the witness, it was equally important that Leumi's attorneys attend in order to protect their client's interests. This cost may be taxed.

An order may be entered directing the Clerk of the Court to re-tax costs in accordance with the foregoing.

---

**19.** 28 U.S.C. § 1920(2) provides that the taking of depositions is taxable if they were "necessarily obtained for use in the case."

**20.** Renfrew, Discovery Sanctions: A Judicial Perspective, *Litigation*, Winter 1980 at 5.

**21.** *Cf. Electronic Specialty Co. v. International Controls Corp.*, 47 F.R.D. 158, 162 (S.D.N.Y. 1969).