**In re REVCO SECURITIES LITIGATION.**

**ARSAM COMPANY, on Behalf of Itself and All Others Similarly Situated, Plaintiff,**

**v.**

**SALOMON BROTHERS, INC., Golenberg & Co.; Sidney Dworkin, William B. Edwards, R. Carroll Hudson, Wilbur Smith, Nathaniel De Rothschild, Robert P. Meisel, and Glenn Golenberg, Defendants.**

No. 89CV593.
Master File No. 851.

United States District Court,
N.D. Ohio, E.D.

March 4, 1992.

---

Karl E. May, Joshua R. Cohen, Kohrman, Jackson & Krantz, Cleveland, Ohio, Merrill G. Davidoff, Berger & Montague, Philadelphia, Pa., for plaintiff.

John W. Edwards, II, Jones, Day, Reavis & Pogue, Cleveland, Ohio, Herbert M. Wachtell, Peter C. Hein, Eric M. Roth, Amy R. Wolf, Scott A. Edelman, Wachtell, Lipton, Rosen & Katz, New York City, Sheldon Berns, Adrienne Lalak Deckman, James J. Bartolozzi, Kahn, Kleinman, Yanowitz & Arnson, Cleveland, Ohio, Charles J. Pawlukiewicz, Thomas A. Downie, Richard D. Panza, Wickens, Herzer & Panza, Lorain, Ohio, Joseph E. Rutigliano, Rutigliano & Associates, Jack M. Schulman, Schulman & Schulman, Cleveland, Ohio, Jeffrey G. Heuer, Nancy L. Waldmann, Jaffee, Snider, Raitt & Heuer, Detroit, Mich., Charles R. McElwee, Frances Floriano Goins, Squire, Sanders & Dempsey, Carolyn K. Seymour, Duvin, Cahn & Barnard, Brian M. Eisenberg, Joseph D. Carney, Calfee, Halter & Griswold, Marvin L. Karp, Ulmer & Berne, Cleveland, Ohio, Bart Timothy Schectman, Harold G. Levison, Mudge, Rose, Guthrie, Alexander & Ferdon, Daniel A. Pollack, Pollack & Kaminsky, New York City, for defendants.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

In this action stemming from the sale of debt and securities for purposes of financing the leveraged buyout of Revco, D.S., Inc., Arsam Company, a disappointed investor, has moved for class certification. For the reasons stated below, this Court grants this motion.

### I.

Arsam alleges that the defendants violated sections 11 and 12(2) of the Securities

Act of 1933 Act, 15 U.S.C. §§ 77k and 77*l*, section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5, and state common law by disseminating a prospectus and registration statement which contained numerous misstatements and omissions. Arsam also charges defendants Sidney Dworkin, William B. Edwards, and R. Carroll Hudson with violating section 15 of the 1933 Act, 15 U.S.C. § 77*o* and section 20 of the 1934 Act, 15 U.S.C. § 78t.

On December 12, 1991, this Court issued a memorandum and order denying defendants' motions to dismiss Arsam's federal securities law claims and granting the motions with respect to Arsam's claims under Ohio Rev.Code § 1707.41. Familiarity with that memorandum and order, which provides an extensive discussion of the facts alleged in the first amended complaint, is presumed.

Dworkin, the chairman and chief executive officer of Revco, (which had been one of the largest drugstores in the nation) sought to take Revco private, hoping to maintain control over the company. In financing the LBO, various issues of debt and securities were sold by the Anac Holding Company, which had been formed by members of the management team of Revco, TSG Holdings Inc., and Golenberg & Co., in order to acquire Revco. Arsam purchased $1 million of senior subordinated notes during the initial public offering which commenced on December 18, 1986. The LBO was completed by the end of December.

After investing in Revco, Arsam did little to monitor its investment, except for reading the *Wall Street Journal* and the *New York Times*. Revco timely paid interest to Arsam in 1987.

On April 15, 1988, Revco announced that it would probably default on an interest payment due in June of 1988. Following Revco's default on that interest payment, Revco filed for bankruptcy in July of 1988. Arsam sold its notes at a loss after Revco's bankruptcy filing.

Arsam seeks to represent a class of investors

who purchased the Debt/Securities during the period from December 18, 1986 through April 15, 1988 and still held some or all of their Debt/Securities as of January 1, 1988. Excluded from the Class are the defendants herein, members of the immediate family of each of the individual defendants, any entity in which any defendant has a controlling interest, and the legal representatives, heirs, successors or assigns of any such excluded party.

This Court allowed defendants an opportunity to conduct discovery, in order to prepare a response to Arsam's motion. Defendants deposed eight representatives of large institutions, who invested in the Revco debt or securities. Prior to reaching an independent settlement with Arsam, defendant Salomon Brothers, Inc. filed an extensive memorandum in opposition to class certification which was adopted by the non-settling defendants.[1]

Defendants have moved for summary judgment, asserting that Arsam filed this action more than one year after it acquired actual and constructive knowledge of its claims.

The Court has also preliminarily approved a $29.75 million settlement reached between Arsam and Salomon. For purposes of that settlement, a class of investors, similar to, but somewhat broader than, the class which Arsam seeks to certify in the pending motion, was recognized. A hearing on the final approval of the settlement is scheduled for March 31, 1992.

## II.

A court may certify a class if it is convinced that the prerequisites of Rule 23 have been satisfied. *General Telephone Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). "The individuals seeking class certification have the burden of proving that they are entitled to class certification." *Reid v. White Mo-*

---

1. Henceforth referred to as defendants' memo-   randum.

*tor Corp.*, 886 F.2d 1462, 1471 (6th Cir. 1989), *cert. denied*, 494 U.S. 1080, 110 S.Ct. 1809, 108 L.Ed.2d 939 (1990).

Fed.R.Civ.P. 23(a) requires the movant to demonstrate that:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Prior to certifying a class, the Court must also make certain findings under one of the alternatives contained in Rule 23(b). Arsam urges this Court to determine "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

■ In determining whether to certify a class, a court should not consider the merits of the action. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974). For purposes of a class certification motion, a court must accept as true the factual allegations contained in the complaint. *Shelter Realty Corp. v. Allied Maintenance Corp.*, 574 F.2d 656, 661 n. 15 (2d Cir.1978); *Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir. 1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). The court "may consider reasonable inferences drawn from facts before [it] at that stage of the proceedings." *Senter v. General Motors Corp.*, 532 F.2d 511, 523 (6th Cir.), *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976).

### III.

#### A. Numerosity

Arsam maintains that joinder of all class members would be impracticable, as this action concerns about one thousand purchasers of Revco debt and securities. Defendants do not object to class certification based on this factor. This Court is satisfied that joinder of all class members is impracticable.

#### B. Commonality and Predominance

■ In support of its motion for class certification, Arsam urges that "defendants' actions in uniformly disseminating information which contained misstatements of material fact or which omitted to state material facts affected, in exactly the same way, each [c]lass member who purchased those securities." Arsam's memorandum, p. 17. Arsam identifies several questions of law and fact that it asserts "constitute the major thrust" of this litigation. *Id.* These issues include:

1) whether the defendants violated federal securities laws;

2) whether the registration statement or prospectus omitted or misrepresented material facts; and

3) whether defendants acted unreasonably or without due diligence in omitting or misrepresenting material facts.

*Id.* Defendants concede the existence of common "issues such as the accuracy or inaccuracy of [the] prospectus as to which an adjudication in the named plaintiff's case will resolve the issue for purposes of the claims of all members of the putative class." Defendants' memorandum, p. 35–36. This Court finds that these issues are common to the class.

After finding commonality, this Court must determine whether the common issues predominate over any questions affecting individual members. "Predominance is usually decided on the question of liability, 'and if the liability issue is common to the class, common issues are held to predominate over individual questions.'" *Fry v. UAL Corp.*, 136 F.R.D. 626, 637 (N.D.Ill.1991) (quoting from *Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y.1981)).

Arsam maintains that

the bulk of this litigation will involve establishing the state of affairs at Revco for a several year period, defendants'

and others' involvement in a leveraged buyout which took over a year to accomplish, defendants' and others' involvement in the preparation of a registration statement which plaintiff contends was materially misleading; the reasons that prospectus was materially misleading; and defendants' and others' roles and level of culpability.

Arsam's reply, p. 63.

Defendants insist that the non-common questions predominate over the common questions. According to defendants, there are numerous issues concerning statute of limitations, reliance, knowledge, loss causation, damages, and state law claims "that affect particular class members differently than they affect" Arsam and other class members. Defendants' memorandum, p. 34. Some of these issues only pertain to Arsam's 1933 act claims or Arsam's 1934 act claims.

### (a) Statute of limitations

Defendants assert that many of Revco's investors had actual knowledge of the "storm warnings" of trouble at Revco and therefore will be time barred from recovering for any losses under the 1933 Act. In order to determine the degree of knowledge of each investor, defendants suggest that this Court will have to conduct a series of mini-trials.[2]

In arguing that the statute of limitations issue predominates over the common issues, defendants for all practical purposes are seeking a determination as to the viability of Arsam's 1933 Act claims. "Such inquiry is outside the scope of Rule 23 and indeed defies the principle enunciated in *Eisen*, that a court may not review the substantive issues raised in a class complaint when determining the claims' suitability for class treatment." *Linton v. Shearson Lehman/American Express, Inc. (In re Baldwin–United Corp. Litigation)*, 122 F.R.D. 424, 427 (S.D.N.Y.1986). The court in *Linton*, therefore, refused to consider on a class certification motion whether "individual questions relating to

the timeliness of certain securities claims predominate over any common issues that may exist." *Id.*

The conclusion reached in *Linton* is particularly applicable in the present case, where the question of whether the statute of limitations issue may involve individualized questions is closely related to the merits of the summary judgment motion. Defendants argue against class certification asserting that there are individualized questions as to the statute of limitations. In their dispositive motions, defendants maintain that they are entitled to summary judgment on statute of limitation grounds, because Arsam had actual and constructive notice of its claims. Considering defendants attempts to distinguish Arsam from the other class members, on account of Arsam's failure to monitor its investments, there is a possibility that the statute of limitations issue is *common* to all members of the proposed class. If defendants prevail on their summary judgment motions, there would be no individualized questions as to the statute of limitations. If Arsam, the passive investor, is found to have been placed on inquiry notice, the more active investors who regularly monitored their Revco investments, would be hard pressed to argue that they lacked such knowledge.

> In any event, the possibility of differences in the application of a statute of limitations to individual class members, including the named plaintiffs, does not preclude certification of a class action so long as the necessary commonality and, in a 23(b)(3) class action, predominance, are otherwise present. [Section] 13's possible effect on the viability of certain investors' claims for damages under § 12, therefore, does not bar class certification.

*In re Energy Systems Equipment Leasing Securities Litigation*, 642 F.Supp. 718, 752–53 (E.D.N.Y.1986) (citations omitted); *Cf. Cameron v. E.M. Adams & Co.*, 547 F.2d 473, 478 (9th Cir.1976) (in an action brought pursuant to Rule 10b–5, the existence of individual issues concerning compli-

---

**2.** In the instant case, the statute of limitations issue at best only pertains to Arsam's 1933 Act claims. It has no bearing on Arsam's 1934 act claims.

ance with the statute of limitations "does not defeat the predominance of the common questions").

Moreover, should necessity dictate, this Court could establish sub-classes which would alleviate the problems anticipated by the defendants. The placement of investors with similar questions as to notice into the same sub-class should reduce the need for individual inquiries as to notice.

### (b) Reliance

In challenging certification as to Arsam's 10b–5 claims, defendants assert that there are individual issues as to reliance. While defendants concede that the existence of such issues does not necessarily dictate denial of class certification, defendants, nonetheless, urge the Court to consider the existence of individual issues of reliance as a factor in determining whether the common issues predominate.

"Reliance is an essential element of a Rule 10b–5 claim that must be pleaded and proved by plaintiffs. The reliance requirement ensures that there is a causal connection between the defendant's fraud and the plaintiff's injury." *Freeman v. Laventhol & Horwath,* 915 F.2d 193, 197 (6th Cir. 1990) (citing *Basic, Inc. v. Levinson,* 485 U.S. 224, 243, 108 S.Ct. 978, 989, 99 L.Ed.2d 194 (1988)). In *Molecular Technology Corp. v. Valentine,* 925 F.2d 910, 918 (6th Cir.1991), the Sixth Circuit recognized that in determining whether an investor's reliance on a misrepresentation or omission was reckless, a court should consider numerous factors including the sophistication of the investor, its access to relevant information, the concealment of the fraud, the opportunity to detect the fraud, and the nature of the misrepresentations. Defendants contend that some of the proposed class members "relied upon a myriad of sources of information other than the Revco prospectus in making their investment decisions and that those investors continued to monitor their investments closely after their initial purchases." Defendants' memorandum, p. 46. Therefore, defendants claim that "a grant of class certification would require the Court to conduct inquiries as to individual class members on reliance issues in order to adjudicate the claims of all members of the putative class. This prospect strongly militates against class certification." *Id.* at 48.

The court in *Gorsey v. I.M. Simon & Co.,* 121 F.R.D. 135, 139 (D.Mass.1988), determined that "it is inappropriate to raise non-reliance at the certification stage because entry into the intricacies of reliance goes to the merits of the case and cannot be considered by a court on a certification motion." In objecting to class certification, defendants are seeking a determination that Arsam's claims are different from the claims of other class members because Arsam placed greater reliance on the prospectus and registration statement than the other investors did. The fact that there may be some differences in the reliance of the class members does "not defeat class status unless there are such obvious variances between the reliance by the proposed representatives and the absent class members that the Court can determine that the[se] issues will predominate with little inquiry into the merits." *Republic National Bank v. Denton & Anderson Co.,* 68 F.R.D. 208, 216 (N.D.Tex.1975). It is not obvious that the variances in reliance will predominate in this litigation.

Furthermore, the question of whether Arsam must demonstrate reliance is unclear. In certain instances, courts have recognized the existence of rebuttable presumptions of reliance. "Whether individual reliance will be a necessary element of Plaintiffs' Rule 10b–5 claims or whether Plaintiffs will be able to utilize a presumption of reliance presents a question that is common to the classes." *In re First RepublicBank Securities Litigation,* [1989 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,554 at 93,544, 1989 WL 108795 (N.D.Tex. Aug. 1, 1989). In *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972), the Court determined that individual proof of reliance can be dispensed with in omissions cases if the omissions are material. In its amended complaint, Arsam alleged that the prospectus and registration statement contained both misrepresenta-

tions and omissions. Defendants urge that Arsam should not be allowed to use the *Ute* presumption because the alleged omissions, as distinguished from the alleged misrepresentations, are not the predominate basis for Arsam's claims. Arsam responds that this case primarily concerns numerous omissions in the prospectus. The question of whether this case predominately concerns misrepresentations or omissions is an issue common to the class. The parties, however, have not analyzed the amended complaint in order to support their respective claims. Consequently, the Court, while not making any determination as to the precise nature of this action, recognizes that there is a possibility that the *Ute* presumption may apply.

Arsam also maintains that reliance should be presumed in the instant case where, but for defendants' fraud, there would have been no market for Revco's securities. In *Freeman*, the Sixth Circuit left open the question whether this theory, known as the "fraud created the market" doctrine supports a presumption of reliance in cases involving new issues of securities. 915 F.2d at 200. The possibility of applying such a presumption reduces the role that reliance plays as a factor in determining predominance. The court in *In re VMS Securities Litigation*, 136 F.R.D. 466, 476 (N.D.Ill.1991), determined that the question of whether the presumption of reliance "under either of these two theories" applies "is beyond the scope of the court's inquiry on a motion for class certification."

Whether defendants can refute a presumption of reliance is speculative, goes to the merits of the litigation, and does not defeat class certification. *First Republic Bank*, at p. 93,544; *see also Fickinger v. C.I. Planning Corp.*, 103 F.R.D. 529, 532, n. 3 (E.D.Pa.1984).

In addition, this Court could create subclasses reflecting the sophistication of particular investors, should the need arise. This would eliminate many of defendants' concerns about reliance.

### (c) Knowledge and loss causation

In terms of the proposed class' §§ 11 and 12(2) claims, defendants urge that the Court would have to conduct an investor-by-investor analysis in order to determine each investor's knowledge as of each time an investment decision was reached. Defendants point out that particular investors learned different facts at different times from different sources. For example, some of the purchasers in the secondary market who were able to buy at deep discounts may have had greater knowledge of the omitted facts than purchasers in the initial distribution.

Defendants also suggest that this Court may have to conduct an individualized inquiry as to certain investors in order to determine the extent of the losses that were caused by the misstatements or omissions. Defendants speculate that certain investors cannot attribute their losses to the Revco prospectus. For example, an investor who sold out because of disenchantment with Revco, who later purchased additional securities, based on the belief that the new management was doing a good job in rebuilding the company, may have difficulty blaming the defendants for his losses from the latter investment.

Although there may be non-common issues as to knowledge and loss causation, these issues do not predominate in this litigation. In addition, the Court can resolve any problem that may arise by placing the initial purchasers and the later purchasers into different sub-classes.

### (d) Damages

In *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1197 (6th Cir.1988), the court held that class certification was appropriate even though "individual members of the class still will be required to submit evidence concerning their particularized damage claims in subsequent proceedings." Recognizing this, defendants nonetheless urge that the need for separate damage calculations is an additional factor that can be used when the Court calculates whether the common claims predominate.

In determining predominance this factor carries little weight. While individual issues as to damages may exist in this case,

as they do in many securities cases, most of the issues concerning liability are common to the class. The possibility of bifurcating liability and damages, which is not under consideration at this time, would eliminate this concern about damages.

### (e) State law claims

■ This case also involves state law fraud and negligence claims. Defendants maintain that an investor-by-investor inquiry will have to be conducted in order to determine "which state's law governs and ... proof will be required as to the nexus between each particular transaction and those jurisdictions whose laws might" apply. Defendants' memorandum, p. 55. Defendants urge the Court to deny class certification as to the state claims, even if this Court decides to certify Arsam's federal claims.

Arsam argues that certification of the state law claims is warranted because the choice of law questions are of minimal importance. The proof used to support the federal claims is the same that will be used for the state law claims.

At this juncture it is unclear "whether there exists such a substantial variation among the states with regard to the common law claims as to outweigh the commonality of legal and factual issues otherwise present in this litigation." *In re Kirschner Medical Corp. Securities Litigation,* 139 F.R.D. 74, 84 (D.Md.1991). One court acknowledged that it

> doubts that the differences in the several states' laws of fraud and negligent misrepresentation are so great as to preclude class treatment. In the event that there are material variations in the law of the fifty states, the Court may employ subclasses or decertify those state law subclasses whose adjudication becomes unmanageable.

*In re Lilco Securities Litigation,* 111 F.R.D. 663, 670 (E.D.N.Y.1986) (citations omitted). Accordingly, this Court finds that the certification of the state law claims is appropriate. The Court, however, will consider revisiting this issue at a later stage in this litigation, if the parties can demonstrate that the certification of these claims are causing significant problems.

### C. Typicality

■ In order to satisfy the typicality requirement, "the named [p]laintiffs' claim must stem from the same event, practice or course of conduct that forms the basis of the class claims and be based on the same remedial theory." *Transamerican Refining Corp. v. Dravo Corp.,* 130 F.R.D. 70, 73 (S.D.Tex.1990) (citing 7A Wright, Miller & Kane, *Federal Practice and Procedure,* § 1764 at 228 (1986)). However, the typicality requirement does not insist on identical claims. *Eisenberg v. Gagnon,* 766 F.2d 770, 786 (3d Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985).

■ Arsam purchased $1 million Revco's senior subordinated notes and asserts that all class members were injured by defendants' "same course of wrongful conduct." Arsam's memorandum, p. 19. Defendants challenge Arsam's contention that its claims are typical of the purported class. Defendants attempt to show a contrast between Arsam—the passive investor—and various institutional investors who "maintained full-time, professional high yield analysts and portfolio managers" who reviewed "Revco's SEC filings and press releases as well as research reports prepared by Wall Street analysts who followed Revco." Defendants' memorandum, pp. 21–22. Unlike Arsam, these institutions monitored the prices of Revco securities and had direct contacts with Revco's management. *Id.* In questioning the typicality of Arsam's claims, defendants raise many of the same issues that they raise with respect to predominance. Defendants argue that the atypicality of Arsam to the other class members impacts various issues such as statute of limitations, reliance, knowledge, and loss causation. A similar argument was made by the defendants in *VMS,* 136 F.R.D. at 475, who maintained that

> typicality is impossible because the circumstances surrounding each plaintiff's investment decision vary. Some plaintiffs allegedly bought their securities during the initial public offerings and

relied on offering prospectuses, while other plaintiffs purchased their securities through brokers on the open-market, and did not review any documents. In addition, some of the purchases were made pursuant to a dividend reinvestment program, and thus involved passive investing, rather than active purchasing on the part of some plaintiffs.

The court determined that the typicality requirement was met because the claims were based on the same legal theory and a "common course of conduct in which certain defendants allegedly misled all of the funds' investors by painting an overly optimistic financial picture of the funds." *Id.* Arsam alleges here that the proposed class was injured by defendants engagement in the same course of conduct—*i.e.* the dissemination of a prospectus containing misrepresentations and omissions about Revco.

Defendants argue that "Arsam is in a radically different position from other members of the putative class with respect to the threshold statute of limitations issues" and therefore its claims are not "typical of the claims of the class that it seeks to represent." Defendants' memorandum, p. 24. Actions pursuant to §§ 11 and 12(2) of the 1933 Act must be "brought within one year after discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." Section 13 of the 1933 Act, 15 U.S.C. § 77m. Defendants maintain that most of the members of the proposed class are time barred "based upon their own *actual* knowledge of 'storm warnings' of trouble at Revco." Defendants' memorandum, p. 26. This action was commenced on April 3, 1989. According to the defendants, the institutional investors deposed "learned well before April 1988 that Revco was experiencing serious financial and management problems sufficient to put investors on notice of the possibility that the Revco prospectus contained misstatements or omissions." *Id.* at 22.[3] Since these investors cannot plead compliance with the statute of limita-

tions in accordance with *Auslender v. Energy Management Corp.*, 832 F.2d 354 (6th Cir.1987), they should not be allowed to rely on Arsam's pleading.

Arsam responds that defendants are improperly seeking a determination of the merits of this litigation on a motion for class certification. Further, defendants' claims are meritless. Arsam maintains that while the defendants have elicited testimony that some individuals were aware of Revco's difficulties in meeting its financial projections and its operational problems and of management changes, defendants have failed to establish that these deponents were aware that Revco's problems "were not the results of economic happenstance or of post-LBO developments, but instead were the result of an ill-conceived LBO which never would have— or could have—occurred had the facts been revealed." Arsam's reply, p. 41. Further, knowledge of declining stock prices and notice of financial difficulties do not trigger inquiry notice of fraud. Moreover, Arsam argues that:

Since most of the debt securities here were bonds (not stock) which contain a covenant to pay principal plus interest, there is even less reason to be concerned about a declining bond price until there is a default, which did not occur until June, 1988 and was not portended until April 15, 1988. Indeed, until an interest payment was missed or bankruptcy declared, no class member arguably suffered *damage*, a key element of any cause of action against … the signatories to the Registration Statement.

*Id.* at 47.

Defendants also contend that Arsam's claims differ from the majority of the rest of the class with respect to issues such as reliance, knowledge, and loss causation. Arsam purchased Revco notes in December 1986 and held them through the collapse of Revco. After purchasing these notes, Arsam conducted no research of Revco, other than reading the newspapers. Other class

---

**3.** In their motions for summary judgment, defendants contend that Arsam also had both actual and constructive notice of the possibility of misstatements or omissions placing it on inquiry notice of its claims against the defendants, prior to April 3, 1988.

members paid far more attention in monitoring their investments. In light of this, these investors "made a variety of investment decisions including decisions to hold, to sell out, to sell a portion of their positions while retaining the balance and even to purchase additional Revco securities after having once sold out entirely." Defendants' memorandum, p. 33. Defendants also claim that the deposed investors are situated differently from one another with regard to these issues.

The Third Circuit in *Eisenberg,* 766 F.2d at 786, rejected similar arguments against class certification where there was a "possibility that only some members of the class may have relied on the offering materials prepared by defendants in choosing to invest." The appellate court determined that the district court's denial of class certification was an abuse of discretion, if its decision "turned on the existence of individual issues as to reliance" because that "case did not present extraordinarily complex questions of causation and reliance." *Id.* The court noted that the core of that case rested on the distribution of "virtually identical written materials." *Id.* at 787. This case involves the distribution of the same prospectus to the proposed class.

The sophistication argument has been rejected by other courts. One's "status as a sophisticated investor renders him neither devoid of the protection of the securities law nor immune to injury by misrepresentation." *Modell v. Eliot Savings Bank,* 139 F.R.D. 17, 22 (D.Mass.1991). In *First RepublicBank,* at 53,546, the court recognized that the omission of material facts or misrepresentation could have misled even sophisticated investors.

Moreover, defendants' theory, if adopted, would abolish the use of class actions in many securities cases. The court in *Vernon J. Rockler & Co. v. Graphic Enterprises, Inc.,* 52 F.R.D. 335, 345 (D.Minn. 1971), recognized that "[r]eliance is an issue lurking behind every securities fraud claim, and to require that it first be proven, would effectively negate the concept of a 10b–5 class action." Defendants' argu-

ment was rejected by one court which noted that

> differing types of reliance are present in almost every securities class action. There will always be some individuals who read the financial statements directly, others who read secondary analyses such as Moody's or Value Line, and many others who relied on the advice of stockbrokers or friends. If defendants' argument were to prevail that factual differences of this nature were sufficient to defeat class action certification, there could never be a class action of securities purchasers.

*Vitiello v. Cicconi (In re Data Access Systems Securities Litigation),* 103 F.R.D. 130, 139 (D.N.J.1984), *rev'd on other grounds,* 843 F.2d 1537 (3d Cir.), *cert. denied,* 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988).

**D. Adequacy**

Rule 23 requires that "the representative parties will fairly and adequately protect the interests of the class." In *Senter,* 532 F.2d at 524–25, the circuit recognized that:

> There are two criteria for determining whether the representation of the class will be adequate: 1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.

Defendants do not challenge Arsam's claims as to adequacy. The Court notes that Arsam purchased $1 million of notes during the class period. Further, as indicated *supra,* Arsam's claims are typical of the rest of the class. Arsam claims that its interests are not antagonistic to the interests of the class. This Court is convinced that Arsam has met the first criterion.

The second criterion involves two prongs. The first focuses on the class representative. This Court does not doubt that Arsam will vigorously prosecute this litigation. As defendants have often pointed out throughout the various pretrial proceedings before this Court, Arsam is comprised of Samuel and Richard LeFrak who invested one million dollars. Samuel LeFrak is a

billionaire. Thus, Arsam has both the incentive to litigate and the means to fund this action. This Court is unaware of any conflicts between Arsam's interests and the interests of the class that it seeks to represent.

The second prong focuses on class counsel. "In making the determination of adequacy of representation the district court should consider the experience and ability of counsel for the plaintiffs." *Cross v. National Trust Life Insurance Co.,* 553 F.2d 1026, 1031 (6th Cir.1977). It is apparent that Arsam's counsel has significant experience in securities and class action litigation and is capable of representing the class' interest.

### E. Superiority

█ Defendants contend that Arsam cannot meet its burden of establishing "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R.Civ.P. 23(b)(3). Defendants suggest that the use of individual actions is better than the use of a class action.

In making a finding as to superiority, the Court is instructed by Rule 23(b)(3) to consider:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability of concentrating the litigation of the claims in the particular forum;

(D) the difficulties likely to be encountered in the management of the class action.

In opposing the use of a class action, defendants make several arguments as to why the use of individual actions "would simplify the case and accelerate the ultimate resolution of the underlying controversy." Defendants' memorandum, p. 58. First, the class members are wealthy investors who are capable of proceeding on their own without the use of a class action. *Id.*

Second, the Court would encounter difficulties in managing this litigation as a class action, given the number of non-common issues that require an investor-by-investor analysis. *Id.* at 61. Third, the fact that only two other law suits have been filed—one which has settled and the other which has been transferred to this Court for discovery purposes—suggests that the overwhelming majority of the investors would not bring an action against the defendants because they do not believe that they have any legally cognizable claims. *Id.* at 62.

The Court finds that class certification is the superior method of adjudicating this dispute. First, the fact that few suits have been filed indicates that the class members have no great interest in controlling the prosecution of the litigation. While members of the class may be capable of litigating separate actions, Rule 23 has no restrictions on wealth. As the Sixth Circuit recognized in *Sterling,* 855 F.2d at 1196, "The procedural device of a Rule 23(b)(3) class action was designed not solely as a means for assuring legal assistance in the vindication of small claims but, rather, to achieve the economies of time, effort, and expense." Further, it is not clear that all class members can afford to commence separate actions. Arsam has produced for the Court the affidavit of Patricia A. Small, associate treasurer of the Regents of the University of California. According to Small, the Regents had purchased one million shares of Revco cumulative exchangeable preferred stock which today are "essentially worthless." Affidavit of Patricia A. Small, ¶ 3. In 1988, after retaining outside counsel to consider what causes of action could be brought against Salomon, the Regents concluded that the costs of litigating an action would be prohibitive. *Id.,* ¶ 6. The Regents is a non-profit institution that claims it could not afford to fund such litigation. *Id.* In addition, if this Court were to deny class certification, it is possible that many class members will file independent actions in light of the Salomon settlement. While Salomon has not admitted liability, the size of that settlement may lead investors to conclude that there are

viable claims against the non-settling defendants. It may also help finance the costs of such litigation. Inevitably, defendants will seek to transfer these cases to this Court for discovery purposes. The parties are in agreement that it is desirable to use one forum to litigate this action. At oral argument, De Rothschild's and Meisel's counsel attempted to paint a rosy picture in which the class members choosing to commence individual actions would select Arsam's counsel to represent them. *Zimmerman v. Thomson McKinnon Securities, Inc.*, [1989–1990 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,733, 1989 WL 122742 (S.D.N.Y. Oct. 11, 1989), was cited as an example of a case where the denial of class certification was not likely to lead to the use of multiple counsel. In that case, 71 of the over 120 potential class members indicated an interest in using plaintiffs' counsel. Arsam's counsel, in response, presented a worst case scenario in which many actions would be instituted by parties using different counsel. Arsam's counsel pointed to *Illinois v. Harper & Row Publishers, Inc.*, 301 F.Supp. 484, 490 (N.D.Ill. 1969), where the court noted that another court's failure to certify a class was responsible for the expansion of a single suit involving a "handful of attorneys" into a multiplicity of suits "that have blossomed throughout the country" and have been consolidated. The court observed that "lawyers are now so plentiful that the entire courtroom is filled at each pretrial conference." *Id.* Attempting to predict how many cases will be filed and how many plaintiffs will retain individual counsel are both highly speculative ventures. Nonetheless, the Court recognizes that the presence of numerous counsel for the various plaintiffs will complicate the management of this case and waste judicial resources. Taking into account these risks, this Court finds that the use of a class action is the superior method for adjudicating this action.

### IV.

In light of the above, this Court grants Arsam's motion for class certification. Arsam shall serve as the class' representative.

The parties are directed to prepare for the court's approval a notice to be submitted to the class that comports with Rule 23(c). Such notice shall be filed with this Court within thirty days of the date of this memorandum and order.

IT IS SO ORDERED.