50 P.3d 844

**ESI ERGONOMIC SOLUTIONS, LLC, an Arizona limited liability company, individually and on behalf of all others similarly situated, Plaintiff–Appellant,**

v.

**UNITED ARTISTS THEATRE CIRCUIT, INC., a Maryland corporation; American Blast Fax, Inc., a Texas corporation, Defendants–Appellees.**

No. 1 CA–CV 01–0396.

Court of Appeals of Arizona,
Division 1, Department D.

July 16, 2002.
Review Denied Jan. 7, 2003.*

---

* Justice Ryan did not participate in the determination of this matter.

LaVoy & Chernoff, P.C. by Christopher A. LaVoy, Phoenix, and Chandler, Tullar, Udall & Redhair, LLP by Edward Moomjian, II, Tucson, Attorneys for ESI Ergonomic Solutions LLC.

Lewis & Roca LLP by Keith Beauchamp Robert G. Schaffer, Phoenix, Attorneys for United Artists Theatre Circuit, Inc.

## OPINION

PATTERSON, Judge.

¶ 1 ESI Ergonomic Solutions, LLC ("ESI") filed suit as the representative of a class action against defendants United Artists Theatre Circuit, Inc. ("United Artists") and American Blast Fax, Inc. ("ABF"). ESI alleged that the defendants violated 47 U.S.C. § 227 (1994), which prohibits transmitting unsolicited advertisements to telephone facsimile machines and provides for a private right of action against violators. 47 U.S.C. § 227(b)(1)(C), (b)(3)(1994). ESI appeals the trial court's denial of its motion to certify the class. For the following reasons, we reverse and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶ 2 In August 1999, United Artists contracted with ABF, a company in the business of distributing advertisements by facsimile, to send a one-page advertisement for discount movie ticket packages. The following month, ABF transmitted the advertisement to about 90,000 facsimile machines in the Phoenix area. Approximately 179 recipients requested information about the discount packages, and 29 purchased gift certificates, for which United Artists received $12,080. None of the recipients, except ESI, complained to United Artists about receiving the advertisement. United Artists paid ABF $3,375 for its services.

¶ 3 After ESI received the faxed advertisement, it filed a complaint, alleging violation of the Telephone Consumer Protection Act ("TCPA"), codified at 47 U.S.C. § 227, which makes it unlawful for persons within the United States to, among other things, "use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227(b)(1)(C)(1994). ESI requested statutory damages of $500 per violation with possible trebling of those damages. 47 U.S.C. § 227(b)(3)(1994). ESI also sought injunctive relief against the defendants on behalf of the asserted class. ESI sought to represent a class consisting of "all persons and entities who received on a telephone facsimile machine" the particular advertisement sent by ABF for United Artists.

¶ 4 The trial court denied several motions for summary judgment filed by United Artists and ABF, including an argument that the TCPA's damages provision violated due process because it provided damages grossly disproportionate to any harm caused.

¶ 5 In September 2000, United Artists filed for Chapter 11 bankruptcy, and all judicial proceedings against it were automatically stayed. While in bankruptcy, United Artists, via ABF, sent to the recipients of the fax advertisement a notice approved by the court advising the fax recipients that the notice was being sent to those with potential claims pursuant to 47 U.S.C. § 227, that any person having a potential claim should file a proof of claim in the bankruptcy, and that any claim for which a proof of claim was not filed would be barred. ESI filed a proof of claim purportedly on behalf of the putative class; no other proofs of claim were filed. The bankruptcy court lifted the automatic stay to permit the parties to pursue the litigation in Arizona. The order specifically provided that any judgment or settlement could be executed only against United Artists' insur-

ance policies and not against the company itself.

¶ 6 In February 2001, ESI moved for class certification. The following month, ABF notified the court that it was dissolving, and its counsel moved to withdraw. ABF made no further appearances in the litigation.

¶ 7 United Artists objected to the class certification arguing, among other things, that a class action was not the superior method of adjudicating the controversy under Arizona Rule of Civil Procedure 23(b)(3). United Artists argued that a class action suit could lead to liability against United Artists disproportionate to the harm caused, that the bankruptcy court had already offered a means of adjudicating the claims, and that the lack of any other claims indicated a lack of interest in pursuing any claim. ESI offered to waive the statutory minimum recovery of $500 per violation and to reduce damages to $90 or alternatively to modify and reduce the number of the class.

¶ 8 The trial court denied ESI's motion for certification of the class, concluding that a class action was not superior to other available methods of adjudication. The court expressed concern that a single plaintiff on behalf of approximately 90,000 other fax recipients was seeking mandatory statutory damages of $45,000,000, and potentially $135,000,000, for the transmission of a one-page advertisement, and that the court would be unable to fashion a reasonable sanction, but would be required to impose what it considered to be a "horrendous, possibly annihilating punishment." The court noted that the actual damage inflicted was minuscule. The court also noted the absence of any other claims, despite notification through United Artists' bankruptcy case, concluding that the case involved only a single plaintiff trying to inflict horrendous damage on the defendants. The court acknowledged that its decision ignored ESI's argument that United Artists would not be "annihilated" because ESI could collect only against United Artists' insurance. The court, however, found that

ESI had failed to explain how "a grossly unfair adjudication which would crush these two Defendants for sending one fax advertisement is rendered fair and equitable because a portion of the damage is absorbed by insurance companies." The court had additional concerns about whether the action complied with other requirements for class certification under Rule 23, but did not reach those issues, concluding that its decision that a class action was not superior was dispositive of ESI's motion to certify the class. The court did not address ESI's offer to waive statutory damages.

¶ 9 ESI moved for reconsideration, offering to accept $40 per violation and to waive any entitlement to trebling of damages resulting in total potential damages of $3.6 million. The court denied the motion for reconsideration without comment on ESI's newest offer to waive statutory damages.

¶ 10 ESI appealed the trial court's ruling. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(D)(1994).

## DISCUSSION

¶ 11 Certification of a class action is governed by Arizona Rule of Civil Procedure 23, and ESI requested certification pursuant to Rule 23(b)(3). Under Rule 23(b)(3), the court must find that the action meets the requirements of Rule 23(a).[1] If those requirements are met, the court may certify the class if it finds that:

> the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Ariz. R. Civ. P. 23(b)(3). The rule provides the following four factors for a court to consider in making its findings.

> (A) the interest of members of the class in individually controlling the prosecution or

---

1. These requirements are that (1) the class is so numerous that joinder of all members is impracticable, (2) questions of law or fact common to members of the class exist, (3) the claims or defenses of the representatives or the parties are typical of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Ariz. R. Civ. P. 23(a).

defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Id.* The four factors are not exclusive, and the court, in its discretion, may consider other relevant factors. *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Lozada v. Dale Baker Oldsmobile, Inc.,* 197 F.R.D. 321, 332 (W.D.Mich.2000).[2] The rule is intended to allow a class action when it would "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Fed.R.Civ.P. 23, Advisory Committee Notes, 1966 Amendment; *Amchem,* 521 U.S. at 615, 117 S.Ct. 2231. The rule provides a mechanism by which those with claims involving small potential recoveries, which reduce incentive to bring an individual action, could aggregate those claims into an action worth someone's labor. *Amchem,* 521 U.S. at 617, 117 S.Ct. 2231. Generally, the rule should be construed liberally, and doubts concerning whether to certify a class action should be resolved in favor of certification. *Godbey v. Roosevelt Sch. Dist. No. 66,* 131 Ariz. 13, 18, 638 P.2d 235, 240 (App.1981). We review for an abuse of discretion a trial court's decision whether to certify a class action. *Id.* at 16, 638 P.2d at 238.

**Lack of Other Law Suits**

 ¶ 12 The trial court, in considering the extent and nature of existing litigation under Rule 23(b)(3), viewed the lack of other lawsuits—particularly in light of the bankruptcy notification—as indicating a lack of interest by other members of the purported class. ESI, citing numerous cases, argues that this interpretation of the factor is improper and that the absence of other lawsuits

supports the superiority of a class action. United Artists concedes that the lack of other lawsuits ordinarily weighs in favor of certifying a class but contends that the rule is not without exception and that, in this case, the lack of claims filed despite notification of the members in the purported class through the bankruptcy supports the court's decision.

 ¶ 13 The focus in considering the existence of other litigation is "whether there is so much pre-existing litigation that a class [action] would be unproductive." *Central Wesleyan College v. W.R. Grace & Co.,* 143 F.R.D. 628, 640 (D.S.C.1992), *affirmed* 6 F.3d 177 (4th Cir.1993). The absence of individual lawsuits is typically viewed as supporting the superiority of a class action. *See In re Indus. Diamonds Antitrust Litig.,* 167 F.R.D. 374, 385–86 (S.D.N.Y.1996); *Gaspar v. Linvatec Corp.,* 167 F.R.D. 51, 60–61 (N.D.Ill. 1996); *Dirks v. Clayton Brokerage Co. of St. Louis, Inc.,* 105 F.R.D. 125, 137 (D.Minn. 1985). This is true for several reasons.[1] The lack of other suits may indicate that individuals are unaware that they possess any claim. *See Littledove v. J.B.C. & Assoc.,* Inc., 2001 WL 42199 *6 (E.D.Cal.2001); *Demitropoulos v. Bank One Milwaukee, N.A.,* 915 F.Supp. 1399, 1419, (N.D.Ill.1996); *Chandler v. Southwest Jeep–Eagle, Inc.,* 162 F.R.D. 302, 310 (N.D.Ill.1995). A class action serves to educate individuals about their rights as well as protect those rights. *Duran v. Credit Bureau of Yuma, Inc.,* 93 F.R.D. 607, 610 (D.Ariz.1982); *Demitropoulos,* 915 F.Supp. at 1419.

¶ 14 The lack of other suits would also be consistent with circumstances when a claim is not economically feasible. Such would be the case when the claim involves a small potential recovery, whereby the cost and inconvenience of pursuing individual litigation would exceed the benefit even if victorious. Under such circumstances the ability to combine claims in a class action permits the vindication of rights that would otherwise go unprosecuted. *See Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 566–67 (2d Cir.1968); *Brown v.*

---

2. Because Rule 23 is identical to Rule 23 of the Federal Rules of Civil Procedure, we view federal cases construing the federal rule as authoritative.

*Lennon v. First Nat'l Bank of Arizona,* 21 Ariz. App. 306, 308 n. 3, 518 P.2d 1230, 1232 n. 3 (1974).

*Cameron–Brown Co.,* 92 F.R.D. 32, 49–50 (E.D.Va.1981).

¶ 15 Additionally, the lack of other suits supports superiority of the class action under another Rule 23(b)(3) factor: the interest of class members to control their own litigation. The lack of other suits suggests that proposed class members would have no such interest. *Walco Inv., Inc. v. Thenen,* 168 F.R.D. 315, 337 (S.D.Fla.1996); *In re Revco Sec. Litig.,* 142 F.R.D. 659, 669 (N.D.Ohio 1992).

¶ 16 The converse also applies. The presence of other suits weighs against class certification because it indicates a willingness to institute individual claims and demonstrates that the potential claim is not necessarily too small to be economically unfeasible outside of a class. *Steinmetz v. Bache & Co., Inc.,* 71 F.R.D. 202, 205 (S.D.N.Y.1976).

¶ 17 United Artists, while agreeing that the absence of other suits typically supports the superiority of a class action, argues that the court could properly consider the lack of other suits as weighing against certification under the circumstances of the case. United Artists cites as support *Castano v. American Tobacco Co.,* 84 F.3d 734 (5th Cir.1996).

¶ 18 In *Castano,* the appellate court reversed the trial court's certification of a class action for a class complaint against tobacco companies for injury related to nicotine addiction. *Id.* at 737. The trial court certified a class consisting of all nicotine-dependent persons in the United States that purchased and smoked cigarettes manufactured by the defendants as well as their estates, spouses, children, relatives, and significant others since 1943. *Id.* In reversing the trial court's decision, the appellate court noted a number of errors, including the failure to meet the superiority requirement. *Id.* at 746. The appellate court commented that class action status for mass tort litigation was generally disfavored, in part because it could strengthen non-meritorious claims. *Id.* The court also noted that the district court certified the class despite recognizing the extensive manageability problems because it believed doing so would preserve judicial resources in the millions of inevitable individual trials. *Id.* at 747. It was in this context that the appellate

court found that the lack of other lawsuits did not support the trial court's action in certifying the class. *Id.* The court found that, in the absence of other litigation and given that the claims were based on a new theory of liability, a potential judicial crisis was just speculation. *Id.* at 748. The court also found that the most "compelling rationale" for finding superiority in a class action was missing in that case—the existence of a negative value suit. *Id.* Individual suits were feasible given that potential damage claims were high, punitive damages were available in most states, and the prevailing party could recover attorneys' fees. *Id.*

¶ 19 *Castano* does not support the trial court's action here. The appellate court in *Castano* found that the lack of other suits undermined the trial court's assumption that a judicial crisis was looming, which was the trial court's rationale for certifying the class despite recognized manageability problems. 84 F.3d at 747–48. The appellate court did not view the lack of suits as indicating a lack of interest in filing a claim, and thus, *Castano* fails to support United Artists' claim. *See id.*

¶ 20 United Artists also cites in support *Ratner v. Chemical Bank New York Trust Co.,* 54 F.R.D. 412, 414 (S.D.N.Y.1972). In *Ratner,* the federal district court denied a motion for class certification pursuant to the Truth in Lending Act of 1968 ("TILA"). *Id.* The court was persuaded that class action certification was inappropriate because the statute's provision for a $100 minimum recovery per violation plus costs and attorneys' fees provided adequate incentive for individual action and because the statutory damages would inflict horrendous punishment on the defendant. *Id.* at 416. In reaching this conclusion, the court listed as a factor that no other members of the proposed class had shown interest in the class action or filed a separate suit and the statute of limitations had run. *Id.* at 414.

¶ 21 Accordingly, *Ratner* does not help United Artists. In *Ratner,* not only had other proposed class members expressed no interest, but they were by that point statutorily barred from ever entering the case at all. *Id.* The lack of suits was not part of the court's classification analysis. *See id.*

¶ 22 The court here did consider that other potential class members filed no claim despite receiving notice of a potential claim through United Artists' bankruptcy proceedings. Even this, we believe, fails to overcome the general rule that the absence of other suits supports class certification. The notice sent was a densely worded, two-page document in small type that notified recipients of a potential claim "pursuant to 47 U.S.C. § 227 pertaining to transmissions that might have been received." Given the lack of specification as to the substantive nature of the claim involved, the failure to respond to this notice cannot be deemed an expression of a lack of interest in the claim filed under the class action. It does not defeat the rationale for class actions and why the absence of other suits favors them: that members of the class might be ignorant of their claims and that, even if aware, may view the expense and effort of litigating individually to be intimidating or prohibitive.

¶ 23 We conclude, therefore, that the trial court, in finding the absence of individual claims to weigh against the superiority of the class, misapplied the factor under Rule 23(b)(3) providing that the court consider "the extent or nature of any litigation concerning the controversy already commenced by or against members of the class." The court thereby abused its discretion. *See Gorman v. City of Phoenix*, 152 Ariz. 179, 182, 731 P.2d 74, 77 (1987) (court abuses its discretion by "misapply[ing] law or legal principle[s]").

### Consideration of "Annihilating" Damages

¶ 24 The trial court, in denying ESI's motion to certify the class, was primarily concerned with the mandatory penalty it would be required to impose against the defendants. The court noted that a mandatory penalty of $500 per violation with possible trebling to $1,500 per violation applied to a class of 90,000 resulted in potential liability to defendants of $45,000,000 or $135,000,000. The court speculated that if other requirements for the class were met, the defendants' defenses were limited, and the court would be "unable to fashion a reasonable sanction" for their prohibited conduct and would be required to impose the mandatory penalty.

Quoting *Ratner*, the court labeled the potential liability to defendants as "a horrendous, possibly annihilating punishment," unrelated and disproportionate to actual damages suffered by ESI or benefits reaped by the defendants. 54 F.R.D. at 416.

¶ 25 ESI contends, for several reasons, that the potential damage to defendants was an improper factor on which to find lack of superiority and that the court therefore abused its discretion. We agree.

¶ 26 The court's ruling evinces a greater concern with the fairness of the consequences to the defendants should a plaintiff class prevail than with the procedural fairness of adjudicating the matter through a class action versus some other method. We agree with ESI that the fairness of the statutory penalty for the specific form of violation alleged here has been decided by Congress in enacting the law and that the court's determination that it would be unfair is an improper consideration in deciding whether a class action is the superior method of adjudication.

¶ 27 Congress made a legislative determination that the appropriate penalty for violating 47 U.S.C. § 227 was $500 per violation or, in the court's discretion, $1,500 per willful violation. 47 U.S.C. § 227(b)(3). In doing so Congress established a penalty designed not only to compensate for the actual damages and unquantifiable harm, but also to deter the offensive conduct. *Texas v. American Blastfax, Inc.*, 121 F.Supp.2d 1085, 1090–91 (W.D.Tex.2000); *Kenro, Inc. v. Fax Daily, Inc.*, 962 F.Supp. 1162, 1166 (S.D.Ind. 1997). The penalty is not so disproportionate to actual damages as to violate due process. *American Blastfax*, 121 F.Supp.2d at 1090; *Kenro*, 962 F.Supp. at 1166.

¶ 28 Having provided for a private right of action and having decided the appropriate penalty, Congress did not preclude the use of class actions to obtain redress for violations. *See* 47 U.S.C. § 227. Rule 23 allows for class actions to "enhance the efficacy" of any private right of action provided by law. *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 266, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972). Class action relief is unavailable only if Congress expressly excludes it, *Califano v. Yamasaki*, 442 U.S.

682, 699–700, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979), and Congress has done so in some statutes. *See, e.g.,* 15 U.S.C. § 6614 (2000) (limiting Y2K class actions); 29 U.S.C. § 732(d) (Supp.1999)(barring designated agency class actions); 15 U.S.C. § 2310(e)(2000)(restricting consumer warranty class actions). Congress provided no express exclusion of class action relief in 47 U.S.C. § 227.

■ ¶ 29 Given that Congress determined the per-violation penalty and allowed for the pursuit of class actions under the statute, it is not for the court to determine that the penalty when applied in a class action context is unfair. The fairness of statutory punishment, within due process concerns, is properly determined by the legislature. *Reiter v. Sonotone Corp.,* 442 U.S. 330, 344–45, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979).

■ ¶ 30 That "ruinous or annihilating" damages should not be considered in the superiority analysis is particularly compelling in circumstances such as this, where the size of the class, and therefore, the potential class liability, is entirely within the control of the defendants. To deny the superiority of a class action because the size of the class made the damages annihilating, would serve to encourage violation of the statute on a grand rather than a small scale. *See* Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 4.43, at 4–177 (3d ed.1992). United Artists argues that this concern is inapplicable here because it was unaware of the statute when it contracted to send the transmissions. What United Artists did or did not know, however, is a fact question for another time. The court, therefore, improperly considered the perceived unfairness of the punishment as a factor in determining the superior method of adjudication.

¶ 31 Furthermore, even if economic impact were a permissible consideration in keeping with *Ratner, Ratner* is inapplicable to this case. In *Ratner,* the plaintiff, seeking class action status, sued the defendant for its failure to show on his credit card statement the "nominal annual percentage rate" in violation of TILA. 54 F.R.D. at 413. In denying the motion for certification, the court noted that TILA provided for a $100 minimum recovery

and payment of costs and attorneys' fees; that allowing a class action would be inconsistent with the remedy specified by Congress; that the proposed recovery of $100 per violation for a class of 130,000 would be a "horrendous, possibly annihilating punishment, unrelated to any damage to the purported class or to any benefit to defendant"; and that the misconduct was at most a technical and debatable violation of TILA. *Id.* at 416.

■ ¶ 32 Keeping in mind that the objective is to determine whether a class action is the superior method for adjudicating the controversy, a critical element in *Ratner* was the availability of a viable alternative remedy in the form of a statutory minimum penalty plus costs and attorneys' fees. *Id.* The availability of attorneys' fees makes the pursuit of individual claims more economically feasible, thereby diminishing any need for class action. *Parker v. Time Warner Entertainment Co.,* 198 F.R.D. 374, 385 (E.D.N.Y.2001). When the amount at issue is small and costs and fees are not recoverable, claimants may well conclude that it would cost more to pursue an individual claim than they could obtain in relief—one of the very circumstances class actions are intended to address. *Amchem,* 521 U.S. at 617, 117 S.Ct. 2231.

¶ 33 Consequently, in *Ratner,* the court considered the impact of the damages on defendant under circumstances in which claimants had viable means of pursuing individual claims. 54 F.R.D. at 416. Here, the TCPA provides for mandatory damages of $500 per violation, but makes no allowance for attorneys' fees or costs. Consequently, unlike in *Ratner,* denying class certification because the statutorily mandated punishment would be too harsh on the defendants leaves potential claimants with no economically feasible means of pursuing their claims.

¶ 34 Additionally, the *Ratner* court found that Congress had specified the remedy to be employed in the event of violations of TILA and that a class action would be inconsistent with that congressional determination. *Id.* Here, the trial court similarly found that the legislative history of the TCPA endorsed the view that victims should bring claims in small claims or justice court without an attorney. Regardless of what the legislative history might suggest, however, Congress provided a private right of action and allowed for class

actions in enforcing that right. Therefore, a class action under the statute cannot be deemed inconsistent with the remedy provided by Congress.

¶ 35 Finally, the court found the violation in *Ratner,* which consisted of the failure to include certain routine information on a credit card statement, to be a "technical violation." In contrast, we agree with ESI that the conduct involved here is not comparable and does not constitute a technical violation. *Id.* Rather, the conduct alleged involved conscious decisions to take an affirmative act expressly prohibited by statute. It also involved taking or using the property of the recipients, even if on a minuscule scale as the court found.

¶ 36 Given that the factors of importance in *Ratner* are absent here, we conclude that the trial court abused its discretion in applying the annihilating punishment factor in its superiority analysis.

### Failure to Consider Proposed Reduced Damages

¶ 37 ESI also argues that the trial court abused its discretion by concluding that potential damages were "annihilating" without considering ESI's offer to accept less than the statutory damages. Because we conclude that the trial court improperly considered the economic impact on defendants, we do not address this issue.

### Bankruptcy Proceeding as a Superior Method

█ ¶ 38 United Artists argues that the bankruptcy proceeding constituted a superior method of adjudicating the matter and that the trial court therefore did not abuse its discretion in finding the class action lacked superiority. We disagree that the bankruptcy proceeding constituted a superior method. As discussed earlier, the notice to the putative class members provided virtually no specific information about the claim to permit recipients to identify the matter at issue. Although the notice may have been adequate for the purposes of the bankruptcy court, it was not "the best notice practicable under the circumstances," as required by Arizona Rule of Civil Procedure 23(c)(2). The goal is to determine the superior available method for the "fair and efficient adjudication of the controversy." *See* Ariz. R. Civ. P. 23(b)(3). Given this standard and the lack of a comprehensive notice to potential claimants, we cannot find that the bankruptcy proceeding provided a superior method of adjudication.

### CONCLUSION

¶ 39 The trial court abused its discretion by construing the lack of other suits as weighing against the superiority of the class action and by considering the potential resulting damages to the defendants in denying the motion for class certification. We, therefore, reverse the court's decision denying the class certification. Because the trial court expressed, but did not articulate, additional concerns about compliance with Rule 23, we remand the matter back to the trial court for further proceedings.

CONCURRING: WILLIAM F. GARBARINO, Presiding Judge, and JOHN C. GEMMILL, Judge.